**Jesus AYALA, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–07–00428–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 21, 2008.

Kurt B. Wentz, Houston, TX, for appellants.

Shirley Cornelius, Houston, TX, for appellees.

Panel consists of Justices YATES, ANDERSON, and BROWN.

## OPINION

JEFF BROWN, Justice.

A jury convicted appellant Jesus Ayala of capital murder and the trial court sentenced him to life confinement without parole in the Institutional Division of the Texas Department of Criminal Justice. In six issues, appellant contends (1) the evidence was legally and factually insufficient to support a finding of specific intent to kill; (2) the court erred in overruling defense counsel's objections to the prosecutor's closing argument, and the cumulative impact of the improper remarks influenced the jury's verdict; and (3) the trial court violated appellant's Sixth Amendment right to confront witnesses against him. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 6, 2006, the complainant, a roofing contractor, and his employee, Hector Cruz, went to a Shell service station to buy a pre-paid telephone card and gas for the complainant's SUV.[1] While they were

parked in front of a gas pump, appellant approached the driver's side of the complainant's vehicle, pointed a gun at the complainant, and demanded money. After the complainant told appellant he did not have any money, Cruz opened the passenger side door and ran away. As he was running, he heard a gunshot.

Gina Lopez, a customer at the service station, was putting milk in her vehicle when she heard the gunshot. After momentarily ducking behind her vehicle for cover, she saw a dark-colored car pull up behind the complainant's SUV and heard the driver tell appellant, who was standing next to the driver's side of the complainant's SUV, to hurry and get into the car. Lopez described the man who got into the passenger side as a Hispanic male wearing a black t-shirt, jeans, and black cap. The car then quickly left the service station. Cruz told Lopez that a stranger had approached the complainant's SUV, demanded money, and shot his employer. Cruz, whom Lopez described as excited, frantic, and in shock, asked Lopez if he could use her cell phone to call 9-1-1. When Lopez looked inside the complainant's vehicle, she saw that the complainant was slumped over the wheel and had a gunshot wound to his chest.

In response to the 9-1-1 call, Harris County Sheriff's Deputy James Cassidy was dispatched to the scene. Upon his arrival, Deputy Cassidy secured the area and located the witnesses. He testified that Cruz, who sat in the deputy's patrol car for approximately five minutes before being interviewed, was very excited and upset by the events. He further testified that approximately seven minutes elapsed between his arrival at the scene and his

---

1. According to Humberta Palacios, the complainant's wife, her husband wanted to get gas for the SUV so that she could drive their

daughters to school before he left the next day for a construction project in Mississippi.

interview with Cruz. According to Deputy Cassidy, Cruz told him that he and the complainant had gone to the service station to buy gas and a telephone card.[2] A Hispanic male then approached the driver's side window, pulled out a gun, and demanded money. Cruz told Deputy Cassidy that after the complainant said he did not have any money, Cruz became scared and fled the vehicle, after which he heard a gunshot fired. Deputy Cassidy and Cruz subsequently went to the complainant's home to notify his wife of the shooting.

Phillip Chevallier and Ronnie Dickie, two witnesses who had initially left the service station after the shooting, returned to the scene to be interviewed by police.[3] Chevallier, a mechanic, testified that he had noticed several cars parked at the service station that evening, among them a black Volvo with a broken tail light parked by some pay phones near the entrance to the station. After paying for gas and returning to his vehicle to fill it up, he heard a gunshot. He then saw appellant move from the driver's side of the complainant's vehicle and get into the passenger side of the Volvo. He testified that as he watched the Volvo drive away, he noticed that one of the tail lights was dimmer than the other. While Chevallier and Dickie spoke with Deputy Sean Sergeant at the scene, Chevallier noticed the Volvo driving by the service station again. Deputy Sergeant immediately issued a broadcast describing the vehicle to other police units in the area.

Deputy Richard Crabtrey, who was on patrol that evening, was in the process of stopping the driver of the Volvo for a traffic violation when he heard the broadcast. After he began his pursuit, the driver accelerated and subsequently parked in the front yard of a residence. When Deputy Crabtrey approached the vehicle, the engine was still running but no one was in the car. He called for back up and coordinated a perimeter search of the area.

Genoveva Castillo, the homeowner in front of whose house the Volvo was parked, testified that after she and her husband had gone to bed that evening, she awoke to go to the bathroom. She saw police cars and the Volvo parked outside of the house. As she was returning to the bedroom, Castillo heard a man's voice and saw someone standing in the corner of the living room. She pretended not to see anything and went back to the bedroom to tell her husband. Her husband confronted the intruder and told him to leave their house. Castillo and her husband then went outside to alert the police. The officers subsequently found the driver, Robert Garza, hiding in a boat in the Castillo's backyard.

The Castillos' daughter, Esmeralda, testified that when she arrived at her parent's home the next day, she noticed a black pouch between the flower pots near the front door. The police were notified and retrieved the pouch. Deputy Guy Clayton identified the weapon inside the pouch as a Smith & Wesson .38 Special with one spent casing, four live rounds, and one empty chamber. Deputy Roy Glover, who processed the crime scene, car, and revolver, testified that appellant's fingerprints were found on the driver's side window of the complainant's SUV. Based on all the

---

**2.** Cruz told Deputy Cassidy that he lived with the complainant and his family and that the complainant was his employer.

**3.** Chevallier testified that he had initially left the scene because he was out on bond and had several outstanding arrest warrants for traffic violations. However, when he and Dickie later drove by the station, Dickie wanted to stop, and Chevallier felt guilty for leaving the scene, so they returned to talk to the officers.

information obtained in the investigation, which included interviews with Cruz and Garza, Houston Police Department Detective Mark Reynolds filed charges against appellant.

Maria Carabello, appellant's former girlfriend, testified that she had picked appellant up early in the morning of March 7, 2006. After driving appellant to Wharton where she rented a hotel room for him, Carabello returned home. On March 8, 2006, Detective Reynolds received a tip from Harris County Crime Stoppers regarding appellant's location. Appellant was subsequently arrested in Wharton and brought back to Houston. In his videotaped statement, he confessed to shooting the complainant but claimed that the shooting was an accident. According to appellant, the weapon discharged when his arm hit the glass of the partially rolled down driver's side window of the complainant's vehicle.

Dr. Albert Chu of the Harris County Medical Examiner's Office testified that the complainant died of a single gunshot to the chest. He further testified that a lack of soot or stippling, as well as the projectile's downward trajectory, was consistent with a driver being shot by someone standing outside the driver's side door.[4]

Richard Anderson, a firearms examiner with the Montgomery County Sheriff's Department, testified that the revolver recovered from the Castillos' residence had fired the projectile that caused the complainant's death. He further testified that the weapon's rebound hammer lock—a passive safety device designed to prevent the gun from firing except when the trigger is pulled—was properly functioning. Anderson concluded that the weapon's trigger had to be pulled in order to dis-

charge it, and that merely bumping the weapon's hammer would not cause it to fire.

Following deliberations, the jury found appellant guilty of capital murder. The trial court assessed punishment at life without parole. Appellant timely filed this appeal.

## II. ANALYSIS

### A. Sufficiency of the Evidence

■ In his first two issues, appellant contends that the evidence is legally and factually insufficient to support his conviction for capital murder. Specifically, he argues that the proof was insufficient to demonstrate that he possessed a specific intent to kill the complainant.

In a legal-sufficiency review, we view all of the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim.App.2004). In a factual-sufficiency review, we view all of the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Escamilla*, 143 S.W.3d at 817.

A person commits the offense of capital murder if the person intentionally causes the death of an individual in the course of committing or attempting to commit a robbery. Tex. Penal Code Ann. § 19.03(a)(2)

---

**4.** Dr. Chu testified that gunpowder stippling, which refers to marks on the skin caused by either unburned or partially burned gunpow- der particles, can generally be seen within a distance of two feet between the end of a weapon and the target.

(Vernon Supp.2006). In the case of capital murder committed in the course of a robbery, there is no requirement that the intent to cause death be premeditated or formulated prior to the commission of the robbery. *See Rousseau v. State,* 855 S.W.2d 666, 674 (Tex.Crim.App.1993). Rather, the intent to cause death must only have been formulated when the actor commits murder. *Id.* In a legal-sufficiency review, the jury's inference of intent is afforded more deference than the evidence supporting proof of conduct. *See Margraves v. State,* 34 S.W.3d 912, 919 (Tex. Crim.App.2000). That is, circumstantial evidence of a defendant's guilty knowledge is not "required to meet the same rigorous criteria for sufficiency as circumstantial proof of other offensive elements." *Id.* In determining the legal sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, a reviewing court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991). With these principles in mind, we turn to the record before us.

A review of the record reveals the following: (1) appellant shot the complainant with a Smith & Wesson .38 Special in the course of committing robbery; (2) Cruz told Lopez that a stranger had approached the complainant's vehicle, demanded money, and shot his employer; (3) Dr. Chu testified that the complainant had died from a single gunshot to the chest and that a lack of soot or stippling, in addition to the projectile's downward trajectory, was consistent with a driver being shot by someone standing outside the driver's side door; (4) Anderson testified that the gun's hammer-block safety was functioning properly, the trigger had to be pulled in order to discharge the weapon, and merely bumping the firearm would not discharge it; and (5) in his videotaped statement to police, appellant confessed to shooting the complainant but said that the shooting was an accident.

Appellant contends that several circumstances in this case preclude a finding that he possessed a specific intent to kill. First, appellant argues that his videotaped statement in which he said that the shooting was an accident demonstrates that he lacked an intent to kill. This argument is without merit. Here, appellant's use of a firearm, a deadly weapon per se, is evidence from which the jury could have inferred a specific intent to kill, "unless in the manner of its use it is reasonably apparent that death or serious injury could not occur." *See Medina v. State,* 7 S.W.3d 633, 637 (Tex.Crim.App.1999). Appellant's use of a firearm under these circumstances was a "manner of use" in which death or serious bodily harm was a likely result. Threatening the complainant by pointing a gun at his chest while demanding that the complainant give him money supports a finding that appellant acted with a specific intent to kill. Further, although an inference that death was intended because a deadly weapon was used may be rebutted by the defendant's own statement, merely presenting a different version of the events does not render the evidence supporting the jury's finding insufficient. *See Anderson v. State,* 701 S.W.2d 868, 872 (Tex.Crim.App.1985). As the trier of fact, the jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See Fuentes v. State,* 991 S.W.2d 267, 271 (Tex.Crim.App.1999); *Bargas v. State,* 252 S.W.3d 876, 887 (Tex. App.–Houston [14th Dist.] May 13, 2008, no pet. h.).

Next, appellant asserts that because he had "merely demanded the complainant's

money" and "there were no prior threats or bad feelings between the parties," these circumstances "dispel any specific intent to kill." However, the offense of capital murder does not include a requirement of a prior relationship between the accused and the complainant. *See* TEX. PENAL CODE ANN. § 19.03(a)(2). Thus, the lack of "prior threats or bad feelings between the parties" does not preclude the jury's finding of a specific intent to kill.

Appellant also argues that because only one shot was fired and the complainant sustained a single gunshot wound, the evidence does not support the jury's finding that he possessed a specific intent to kill. In support of his argument, he cites to *Medina v. State,* 7 S.W.3d 633 (Tex.Crim. App.1999), *Mouton v. State,* 923 S.W.2d 219 (Tex.App.–Houston [14th Dist.] 1996, no writ), and *Motilla v. State,* 38 S.W.3d 821 (Tex.App.–Houston [14th Dist.] 2001), *rev'd on other grounds,* 78 S.W.3d 352 (Tex.Crim.App.2002).[5] Appellant's reasoning is flawed. The fact that appellant fired the weapon only once and that the complainant sustained a single wound does not establish a lack of intent to kill. *See Marshall v. State,* 210 S.W.3d 618, 620 (Tex. Crim.App.2006) (upholding appellant's conviction for capital murder where victim was shot once in course of commission of robbery).

The evidence is legally and factually sufficient to support the jury's finding that appellant had a specific intent to kill the complainant. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the complainant possessed a specific intent

to kill the complainant. We further find that the jury's verdict was not against the great weight of the evidence, clearly wrong and unjust, or biased. Issues one and two are overruled.

## B. Jury Argument

In issues three through five, appellant contends the trial court erred in overruling defense counsel's objections to the State's closing argument. Specifically, he argues that several portions of the prosecutor's final argument were improper because (1) she inserted her own feelings and the jury's purported feelings into the case and asked the jury to abandon its objectivity; (2) she asked the jury to find appellant guilty of capital murder rather than felony murder because that was the verdict the complainant and his family desired; and (3) of the cumulative impact of the prosecutor's improper arguments.

■■■ Proper jury argument falls within one of four categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) in response to argument of opposing counsel; and (4) plea for law enforcement. *See Wesbrook v. State,* 29 S.W.3d 103, 115 (Tex.Crim.App.2000). However, even when an argument exceeds the permissible bounds of these approved areas, an error will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Id.* Counsel's remarks during final argument must be considered in the context in which they appear. *See Denison v. State,* 651 S.W.2d 754, 761 (Tex.Crim.App.1983) (en

**5.** In *Medina* and *Mouton,* the juries found that evidence of multiple wounds and gunshots evinced a specific intent to kill. *See Medina,* 7 S.W.3d at 637; *Mouton,* 923 S.W.2d at 223. In *Motilla,* the court concluded that evidence

showing the appellant had fired the weapon multiple times prior to the deadly shot was sufficient to prove a specific intent to kill. *See Motilla,* 38 S.W.3d at 824.

banc). Attorneys may draw all reasonable, fair, and legitimate inferences from the facts in evidence. *See Shannon v. State,* 942 S.W.2d 591, 597 (Tex.Crim.App. 1996).

Appellant complains about several remarks that the prosecutor made in the following portion of the State's closing argument:

PROSECUTOR: Ladies and gentlemen, this is not a case about Jesus Ayala anymore as much as it is about a case about what kind of society you want to live in.

DEFENSE COUNSEL: Objection, Your Honor, that's improper.

THE COURT: Overruled.

PROSECUTOR: This is a case about what you want to allow on the streets of Houston. It is a case about what wild and crazy story someone can come in and tell a jury and they'll accept. And when you pass judgment on why there are bad people out there, you can look back on this case. You decide today what kind of society you want to live in, and what—

DEFENSE COUNSEL: Judge, I'm going to renew my objection. That's improper, talking about societal [sic], objection.

THE COURT: Overruled.

PROSECUTOR: You decide. And I submit to you that you'll never pull into a gas station again without thinking about Jesus Ayala, never again. I know I won't.

DEFENSE COUNSEL: Objection, Your Honor, that's improper.

THE COURT: Overruled.

PROSECUTOR: And I hope you also think of Carmen, and her children, and Juan, and the justice they're entitled to.

DEFENSE COUNSEL: Your Honor, that is improper, and I'm going to continue to object.

THE COURT: Overruled.

PROSECUTOR: And on this day, when you're in the 12 seats, I ask you to deliver them that justice.

DEFENSE COUNSEL: Objection, Your Honor, that's improper.

THE COURT: Overruled.

PROSECUTOR: Convict that man of the offense that he deserves to be convicted of, capital murder. There's nothing, nothing else that is fair and right in this case.

DEFENSE COUNSEL: Objection, Your Honor, that's improper.

THE COURT: Overruled.

■ Appellant first contends that the prosecutor's suggestion that neither she nor the jury members would go to a gas station again without thinking of appellant was improper. He argues that by inserting her own fears and those of the jury into the case, the prosecutor asked the jury to abandon its objectivity.[6]

---

**6.** The State argues that appellant failed to preserve this complaint for review. Specifically, it contends that because defense counsel objected only that the remark was improper, he did not apprise the trial court of the grounds for the objection, and the grounds were not apparent from the context. *See* Tex. R.App. P. 33.1; *Cooper v. State,* 961 S.W.2d 222, 228 (Tex.App.–Houston [1st Dist.] 1997, pet. ref'd). Although the objection could have been more specific, we must nevertheless consider it in its proper context. *See Denison,*

651 S.W.2d at 761. Immediately preceding the objection at issue, defense counsel stated, "I'm going to renew my objection. That's improper, talking about societal [sic], objection." Immediately following the objection in question, counsel had stated, "Your Honor, that is improper, and I'm going to continue to object." Thus, viewed in context, defense counsel was arguably objecting to the complained-of remark on the same ground as his previous and subsequent objections, *i.e.,* as an impermissible request to satisfy community

In support of his argument, appellant relies upon *Brandley v. State*, 691 S.W.2d 699, 712 (Tex.Crim.App.1985), and *Torres v. State*, 92 S.W.3d 911, 922 (Tex.App.–Houston [14th Dist.] 2002, pet. ref'd). In *Brandley*, the prosecutor asked the jurors during the punishment phase of the trial to place themselves in the shoes of the child victim's father. *See Brandley*, 691 S.W.2d at 712.[7] Defense counsel objected, the court sustained the objection, and the judge instructed the jury to disregard the statement. *Id.* at 713. The Court of Criminal Appeals found the argument to be an improper plea to the jurors to abandon their objectivity, but nevertheless harmless in light of the record as a whole and the timely instruction to disregard. *Id.* In *Torres*, during the punishment phase of the trial, the prosecutor asked the jurors to put themselves in the place of the victim. *See* 92 S.W.3d at 920.[8] After providing an insightful historical analysis, the *Torres* court concluded that the prosecutor's remarks were merely an appeal to the jury to apply their general knowledge and experience to the evidence adduced at trial, and that it did not unfairly influence the jury's recommendation. *Id.* at 920–24.

Notwithstanding the fact that the remarks at issue in *Brandley* and *Torres* were made during the prosecutor's arguments during the punishment phase, we find those arguments distinguishable from the prosecutor's remark here. In those cases, the prosecutor directly urged the jury to imagine and focus on the events of the criminal act as if it had actually happened to them and their families. *See Linder v. State*, 828 S.W.2d 290, 303 (Tex. App.–Houston [1st Dist.] 1992, pet. ref'd). Such an argument openly pleads with the jury to abandon its objectivity in deciding the case. *See Brandley*, 691 S.W.2d at 712. Here, by contrast, the prosecutor did not ask the jurors to abandon their objectivity by placing themselves in the victim's shoes. Rather, when viewed in light of the immediately preceding and subsequent remarks, it is clear that her comment was part of a broader plea for law enforcement and, thus, falls within one of the four categories of proper jury argument. *See Wesbrook*, 29 S.W.3d at 115. The trial court did not err by overruling appellant's objection. We overrule his third issue.

■ Appellant next contends the prosecutor's remarks—"I hope you also think of Carmen, and her children, and Juan, and the justice they're entitled to ... And on this day, when you're in the 12 seats, I ask you to deliver them that justice"—asked the jury to find appellant guilty of capital murder rather than felony murder to fulfill the expectations of the complainant and his family. Appellant argues that, in doing so, the State asked the jury to do "that which the law prohibits, namely have the accused's verdict, or punishment, assessed by the victim and his family, or by a jury endeavoring to assess the verdict and pun-

expectations. Under these circumstances, we will afford appellant the benefit of the doubt and assume that his trial counsel's objection to the impropriety of the remark was based on the same ground.

7. The prosecutor argued, "It is fair for you to think about the feelings of the father who lost his baby daughter and it is fair for you to think about how you would feel if you lost your children...."

8. The prosecutor argued,

I think it is very easy in the course of a trial to hear evidence in a very antiseptic, sort of unemotional way, and for a moment before you decide what to do with this defendant, I want you to close your eyes and think of how that young man felt.... Don't you know he was scared? Don't you know he said to her, ["]Don't leave me. Please don't let me die. I love you.["] Nobody should have to die that way and that is worthy of your consideration.

ishment the victim, or his family, desires." *Torres,* 92 S.W.3d at 921. The State counters that the prosecutor merely urged the jurors to think of the justice the family was entitled to based on the evidence adduced at trial and, therefore, her remark was a proper plea for law enforcement. The State further asserts this is so, particularly in light of her next remark, "Convict that man of the offense that he deserves to be convicted of, capital murder.... There's nothing, nothing else that is fair and right in this case." We agree. The prosecutor did not ask the jurors to render a verdict based on what the complainant's family desired; rather, she urged them to convict appellant of capital murder because the evidence supported such a verdict. *See Martinez v. State,* 17 S.W.3d 677, 693 (Tex.Crim.App.2000) (finding that remark that victims and their families "cry out ... for the death penalty in this case" was a plea with the jury to give the death penalty "because the record before the jury showed that the defendant deserved it.").[9]

We overrule appellant's fourth issue. In light of our disposition of issues three and four, we do not reach appellant's fifth issue related to the cumulative impact of the prosecutor's arguments.

## C. Confrontation Clause

■ In his sixth issue, appellant contends that the admission of Cruz's out-of-court statements to Deputy Cassidy violated his right to confront witnesses against him under the Sixth Amendment. He argues that the statements were barred under *Crawford v. Washington,* 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and their admission constituted reversible error.[10] The State counters that appellant failed to object under the Confrontation Clause and, thus, waived his argument on appeal.

At trial, Deputy Cassidy testified that he arrived within ten to fifteen minutes of the shooting, and that he initially secured Cruz in the back of his patrol car until he could interview him. Deputy Cassidy testified that Cruz appeared very excited and upset by what had happened, and that he was still under the influence of the events when Cassidy spoke to him. When the State asked Deputy Cassidy if Cruz had told him why he was at the service station that night, defense counsel objected and the following exchange took place during a bench conference:

PROSECUTOR: I thought I laid the excited utterance predicate.

THE COURT: How far? How long after the—

PROSECUTOR: He said it was within 10 or 15 minutes of the shooting, and he was still under the influence of it.

DEFENSE COUNSEL: Well, the problem with that is this officer wasn't there at the time of the shooting. He was one of the earlier officers that ar-

---

9. The *Martinez* court assumed, without deciding, that the comment did not fall within the permitted categories of jury argument, and conducted a harm analysis. *See Martinez,* 17 S.W.3d at 692. Noting that the complained-of remark appeared to constitute a plea for law enforcement, the court concluded that because the degree of misconduct, if any, was relatively mild, and the evidence supporting appellant's death sentence was strong, error, if any, was harmless. *See id.* at 693–94.

10. In *Crawford,* the United States Supreme Court held that out-of-court statements by a witness, who fails to testify at trial, are barred by the Confrontation Clause unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable under the rules of evidence. 541 U.S. at 59–69, 124 S.Ct. at 1369–74; *Oveal v. State,* 164 S.W.3d 735, 739 n. 2 (Tex.App.–Houston [14th Dist.] 2005, pet. ref'd).

rived. He doesn't know what time the shooting was.

THE COURT: Well, he said 10 or 15 minutes early in his testimony.

DEFENSE COUNSEL: Your Honor, what he said was he had already, the victim had already left. He doesn't know how—he hasn't testified as to the incident that had occurred before he was there.

THE COURT: Well, okay. All right. Overruled.

PROSECUTOR: I'll clarify that. Okay.

DEFENSE COUNSEL: The other objection to this, Your Honor, is the declarant, the person who made this statement, hasn't been determined whether or not he's available or not.

PROSECUTOR: He's not available. He's gone, but I don't think that applies. Availability of declarant is immaterial under the excited utterance, but the availability is immaterial.

THE COURT: Overruled.

After the State resumed its examination of Deputy Cassidy, defense counsel again objected on hearsay grounds and conducted a voir dire of the witness. He specifically questioned Deputy Cassidy as to the length of time between the shooting, his arrival at the scene, and his subsequent interview of Cruz, and thereafter renewed his hearsay objection.

Appellant argues that after his counsel objected to Deputy Cassidy's testimony on hearsay grounds, he "also made the court aware of a possible Confrontation Clause violation by further objecting that the declarant was not available." The State contends that defense counsel's objection regarding Cruz's availability was not an objection under the Confrontation Clause but, instead, an objection to the State's attempt to introduce the evidence under the excited-utterance exception to the hearsay rule. *See* TEX.R. EVID. 803(2) (excluding from hearsay rule 802 "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.").

The excerpt above reflects that after the trial court overruled his initial hearsay objection to Deputy Cassidy's testimony, defense counsel objected on the grounds that the witness's availability had not yet been determined. The prosecutor confirmed that Cruz was not available, stating, "He's gone, but I don't think that applies.... Availability of declarant is immaterial under the excited utterance...." Had defense counsel intended to lodge an objection under the Confrontation Clause, this was his opportunity to clarify the basis for his objection to the court. Instead, after the trial court overruled his objection and the prosecutor had resumed her questioning of Deputy Cassidy, defense counsel once again objected to the testimony as hearsay, and conducted a voir dire of the witness which focused solely on the time that had elapsed between the shooting, his arrival at the scene, and his interview of Cruz. After he concluded the voir dire, defense counsel renewed his hearsay objection.

To preserve a complaint for appellate review, a party must have presented the trial court with a timely request, objection, or motion stating the specific grounds for the ruling sought unless the specific grounds are apparent from the context. TEX.R.APP. P. 33.1. We conclude that appellant failed to object on Confrontation Clause grounds, and that such a ground was not apparent from the context. Thus, appellant has failed to preserved this issue for review. *See Wright v. State*, 28 S.W.3d 526, 536 (Tex.Crim.App.2000) (holding appellant's failure to specifically object under Confrontation Clause at trial waived chal-

lenge on appeal); *Oveal,* 164 S.W.3d at 739 n. 2 (finding appellant's failure to object on Confrontation Clause grounds waived complaint on appeal). Appellant's sixth issue is overruled.

## III. CONCLUSION

Having overruled appellant's six issues, we affirm the judgment of the trial court.