*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# MEMORANDUM OPINION

No. 04-09-00330-CR

Amador M. **VALDEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 7, Bexar County, Texas
Trial Court No. 242753
Honorable Monica E. Guerrero, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Steven C. Hilbig, Justice, concurring in the judgment only

Delivered and Filed: May 12, 2010

AFFIRMED

Amador M. Valdez was found guilty of the misdemeanor offense of assault bodily injury -

family and was placed on community supervision for two years. He appeals, arguing that (1) the

evidence was legally and factually insufficient; (2) the trial court erroneously allowed the State to

introduce evidence in violation of Texas Rule of Evidence 404(b); (3) the trial court abused its

discretion in denying his motion for continuance; and (4) the trial court abused its discretion in

denying his "numerous motions for mistrial." We affirm.

## BACKGROUND

Around 3:00 a.m. on February 2, 2008, neighbors of Priscilla Ponce, Valdez's wife, were awakened by loud banging on their front door. One of those neighbors, Julia Vasquez, testified that her grandson woke her up and told her that the woman next door, Priscilla Ponce, "was screaming outside." When Vasquez opened her front door, Ponce was screaming and telling Vasquez, "Call the police. Call the police. He was trying to kill me. He was choking me." According to Vasquez, Ponce's "hair was all messed up, and she was hysterical. She was screaming." Ponce kept repeating that her husband had choked her and tried to kill her. Vasquez testified that Ponce's husband was Valdez and that he was standing right behind Ponce:

> She was about right here, and he was about right here, just a walking distance. And, he kept on telling her, "Come on, let's go home. Let's go home." She said, "No, you were choking me. You're trying to kill me. Call the police. Call the police." She kept repeating. Then he said, "She's making a mountain out of a mole hill. She always runs me off, and then she calls me back." That's what he told me. And then she kept on screaming, and he said, "Okay. Call the police. Anyway I got money to come out."

According to Vasquez, Ponce seemed to be very scared. So, Vasquez told her grandson to call the police.

Likewise, Vasquez's grandson, Victor Martinez, testified that Ponce was crying. According to Martinez, Ponce said that her husband had come home, choked her, and was trying to kill her. Martinez testified that he called the police.

Officer John Silva arrived on the scene. Officer Silva testified that he could tell Ponce had been crying and was "obviously scared." Ponce told Officer Silva that Valdez "had went into the house and choked her." Ponce said that she and Valdez had been arguing, and Valdez began choking her. She then tried running to the neighbors' house to get help, but Valdez "grabbed onto her, trying

to prevent her from going. She finally broke out of his grasp and was able to get help." Officer Silva testified that he saw "some red markings" on Ponce's neck, which indicated that "somebody did put a hand on her." Photographs taken on the night of the incident, which show the red marks on Ponce's neck, were then admitted into evidence. According to Officer Silva, Ponce's injuries were consistent with her story that Valdez had choked her. A photograph of Valdez showing a scratch on his face was also admitted into evidence. According to Officer Silva, he believed the scratch to have been caused by Ponce as she was defensively trying to stop Valdez from choking her. Officer Silva also testified that when he entered Ponce's home, he saw a hole in the wall. A photograph depicting the hole in the wall was admitted into evidence. Officer Silva then spoke to Valdez and asked him for his side of the story. According to Officer Silva, Valdez replied, "She's right." Officer Silva testified that he understood Valdez's statement to mean that Ponce had told the truth about the assault.

Ponce's statement that she gave to police on the night of the incident was also admitted in evidence:

> I was asleep. [Valdez] came in at 2:00 in [the] morning drunk and wanted to argue. I told him to [please] leave and go to his home. He didn't want to leave [and] just started strangling my neck while I'm in bed. [Valdez] got up to punch a hole in my wall and I ran neck [sic] door out of desperation and called cops.

At trial, Ponce recanted her previous statements to her neighbors and police, claiming that Valdez never assaulted her. According to Ponce, Valdez arrived at their home in the early morning hours and woke her up with sexual advances. Ponce testified that because she was tired and upset that he had been drinking, she refused his advances, which resulted in them arguing. Ponce claimed that she fabricated the story and ran to her neighbors' house because of learned behavior from her former abusive husband:

> I don't believe [Valdez] should suffer for me being emotionally distraught from my former marriage with Hector Ramirez. For seven years, I was beaten and I was abused. And, to find out that [Hector] die[d] of AIDS for being a homosexual, I am traumatized for that whole experience of seven years of battered wife. Then I meet [Valdez], get married.

* * *

> Yeah, I was asleep, tired -- like I said, tired from work. He comes in and, you know, just wants to -- well, do things, and I'm exhausted and tired. So out of frustration, yeah, I call 911 and make up a lie that he assaulted me because that was a pattern I had for seven years with Hector Ramirez.

Ponce claimed that the red marks on her face were caused by a "hysteria rash," pimples, and rosacea. And, Ponce claimed that Hector Ramirez, not Valdez, was the person who punched the hole in the wall.

### SUFFICIENCY

Valdez argues that the evidence is both legally and factually insufficient to support his conviction on the charge of assault bodily injury - family. In a legal sufficiency review, we view the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 729-30 (Tex. Crim. App. 2005). In a factual sufficiency review, we view all the evidence in a neutral light and will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Id.* at 730-31.

We hold the evidence to be legally sufficient. Ponce's neighbors testified that she appeared at the door, in the middle of the night, hysterical. Ponce told them that Valdez had choked her and was trying to kill her. Ponce said the same thing to Officer Silva and wrote the same thing in a

statement. Photographs taken on the night of the incident show red marks to Ponce's neck consistent with her being choked.

With regard to factual sufficiency, Valdez emphasizes that Ponce recanted her earlier statements and testified that she had lied to her neighbors and police. The jury, however, was free to accept or reject all or any portion of Ponce's testimony. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). Whether Ponce was testifying truthfully at trial or whether her statements on the night of the incident were truthful was a credibility question for the jury, to which we must defer. *See Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000). We hold that the evidence is factually sufficient.

## RULE 404(B)

In his second issue, Valdez argues that the trial court erred in allowing the State to introduce evidence of extraneous bad acts in violation of Rule 404(b). As a pretrial matter, Valdez requested that any evidence of extraneous bad acts be excluded because, although requested by Valdez, the State had not provided notice of its intent to introduce evidence of extraneous bad acts. The State responded that it did not intend to introduce any evidence of extraneous bad acts unless the defense opened the door to such evidence. Then, during opening statement, Valdez pronounced that the evidence would show the following:

> [Ponce] will admit and take the stand that none of this ever happened. She made it all up. She made it all up, called the police, [and] filed a police report because she was mad because [Valdez] went out drinking. That's what we're going to show. You'll hear straight from the horse's mouth, so to speak. I want you to take that seriously into consideration when you hear whatever else they put on there. The reasonable doubt standard will be met, and it will be a fairly simple process for you to ascertain the truth in this case. The truth will be, I lied. I made the whole thing up. I was mad at him, period. And that will be it. And with that, you will have everything that they'll put up. It may be convincing, it may not be. I don't know, we'll see, but

nothing will be more convincing than the cry in the night, which will ultimately be a soft mutter on the stand where she says, I was mad. I was in an emotional state. I was angry. I made the whole thing up.

After Valdez's opening statement, the State argued to the trial court that because Valdez opened the door in opening statement by stating that the complainant had lied, thereby presenting a theory of fabrication, the State should be allowed to introduce evidence of extraneous bad acts to rebut the theory of fabrication pursuant to *Bass v. State*, 270 S.W.3d 557 (Tex. Crim. App. 2008). The trial court agreed. Valdez did not obtain a running objection.

Valdez now argues that the trial court erred in allowing Delia Ramirez, Ponce's former mother-in-law, to testify that Valdez assaulted her on March 13, 2008, and in allowing photographs depicting injuries sustained by Ramirez's son and Valdez as a result of the March 13, 2008, incident to be admitted. Valdez, however, has failed to preserve error for appeal. "To preserve error in admitting evidence, a party must object each time the inadmissible evidence is offered or obtain a running objection. An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). During Ramirez's testimony, Valdez did not object each time the allegedly inadmissible evidence was offered. Any error in the admission of the objected-to testimony was therefore cured.

Valdez also argues that the trial court erred in allowing the State to question Ponce about extraneous bad acts and in admitting photographs depicting injuries sustained. Once again, however, Valdez failed to object each time the allegedly inadmissible evidence was offered. Although Valdez objected before Ponce was questioned about the extraneous bad acts, he did not obtain a running objection and did not object each time the evidence was offered during her testimony. Therefore, any error in the admission of the objected-to testimony was cured.

## MOTION FOR CONTINUANCE

In his third issue, Valdez argues that the trial court erred in denying his motion for continuance. We review a trial court's ruling on a motion for continuance for abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his motion. *Id.*

After opening statement, the State argued that Valdez had opened the door to extraneous offense evidence by arguing a theory of fabrication. Defense counsel then objected stating, "I do not believe that the door was opened or could be opened at argument by stating the facts of the case that the complaining witness intends to take the stand and say that she made the whole thing up." The trial court responded, "Well, looking at this *Bass* case, it sure does seem to say that." Defense counsel then moved for a continuance so that he could do research "to rebut the State's case law." Defense counsel then tried to distinguish the facts of *Bass v. State*, 270 S.W.3d 557 (Tex. Crim. App. 2008), from the facts presented in this case. The trial court noted that the case law seemed "very clear on this" and stated, "If you want, I will give you a couple of moments to explain that theory to Mr. Valdez and let him know what the ruling is, and after that we're going to start back up." Defense counsel then moved for another continuance so that he could "have the opportunity to persuade the Court otherwise." The trial court denied this second request for continuance. On appeal, Valdez argues that he was denied "an opportunity to review and respond to the case law that the State presented to him for the first time at trial." We first note that the State was not required to provide Valdez with case law before trial. Secondly, we note that the State presented the case law in response to Valdez's opening statement. Therefore, we see no abuse of discretion by the trial court in denying Valdez's motion for continuance.

**MOTIONS FOR MISTRIAL**

In his final issue, Valdez argues that the trial court abused its discretion by denying his numerous motions for mistrial. We review a trial court's ruling on a motion for mistrial for abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). Thus, we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Id.* (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)).

First, Valdez argues that the trial court abused its discretion in denying the motion for mistrial he made when Delia Ramirez began testifying about the March 13, 2008, incident. However, as noted previously, Valdez did not object each time Ramirez testified about the March 13, 2008, incident. *See Valle*, 109 S.W.3d at 509 ("An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection."). Likewise, Valdez argues that the trial court abused its discretion in denying the motion for mistrial he made during Ponce's testimony. As noted previously, during Ponce's testimony, Valdez objected, arguing that the State should not be allowed to question Ponce about Valdez's extraneous bad acts and that photographs depicting injuries sustained as a result of the March 13, 2008, incident should not be admitted. However, as noted previously, Valdez did not obtain a running objection and did not object each time the evidence was offered during Ponce's testimony. *See id.* Thus, we find no abuse of discretion by the trial court in denying Valdez's motions for mistrial.

Second, Valdez argues that the trial court abused its discretion in denying the motion for mistrial he made when Ponce's written statement to police was admitted in evidence. However, even if we were to assume that Ponce's written statement was erroneously admitted, the substance of the

report was testified to by other witnesses. *See Valle*, 109 S.W.3d at 509. Therefore, we find no abuse of discretion by the trial court in denying the motion for mistrial.

Finally, Valdez argues that the trial court abused its discretion in denying the motion for mistrial he made during the State's closing argument. During closing argument, the State argued the following:

> Well, again, who has a reason to lie? It's something to think about. Again, you know, we talked about plenty of reasons why victims don't go forward, whether it's money, whether they moved back. Well, you heard – you heard her take the stand and say, you know what, he's been going to church. He's been sitting with Jehovah's Witness, and he's made an improvement. He's gone from something that he was to now this peaceful guy that he is. Well, you know, if he thinks he's made amends with the Lord, I'm – good for him. Now, it's time for him to make amends with the State of Texas because we don't allow this to happen. *Y'all wouldn't want your sisters or your daughters or your mothers to be in this situation*.

(emphasis added). Valdez then objected on the grounds that the prosecutor cannot ask jurors to put their families in the position of the victim.

A proper jury argument must fall within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and, (4) plea for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999). We agree that the prosecutor's argument was improper. A prosecutor may not ask a juror to imagine and focus on the events of the criminal act as if it had actually happened to them and their families. *See Brandley v. State*, 691 S.W.2d 699, 712 (Tex. Crim. App. 1985); *Ayala v. State*, 267 S.W.3d 428, 435 (Tex. App.—Houston [14th Dist.] 2008, pet. filed). Such an argument openly pleads with the jury to abandon its objectivity in deciding the case. *Brandley*, 691 S.W.2d at 712; *Ayala*, 267 S.W.3d at 435.

However, we must disregard such error unless it affects Valdez's substantial rights. *See* TEX. R. APP. P. 44.2(b); *see also Brown v. State*, 270 S.W.3d 564, 572 (Tex. Crim. App. 2008). To determine whether Valdez's substantial rights were affected, we balance the severity of the misconduct (i.e., the prejudicial effect), any curative measures, and the certainty of conviction absent the misconduct. *Brown*, 270 S.W.3d at 573. "Further, in evaluating the severity of the misconduct, we must assess whether the jury argument is extreme or manifestly improper by looking at the entire record of final arguments to determine if there was a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id.* (quotations omitted). Viewing the State's closing argument in its entirety, we cannot conclude that there was a willful and calculated effort on behalf of the State to deprive Valdez of a fair and impartial trial, and viewing the record as a whole, we cannot conclude that Valdez was prejudiced by the State's remark. *See id.* Although there were no curative measures, such as an instruction to disregard, the State's comment was quick, and the State did not dwell upon it during closing argument. And, given the evidence presented at trial, we fail to see how this comment made by the State prejudiced Valdez. *See Brandley*, 691 S.W.2d at 712 (holding that the prosecutor asking the jurors during the punishment phase of the trial to place themselves in the shoes of the child victim's father was harmless error). Therefore, we hold that the improper comment made by the State was harmless, *see* TEX. R. APP. P. 44.2(b), and the trial court did not abuse its discretion in denying Valdez's motion for mistrial.

Valdez also argues that the trial court should have granted the second motion for mistrial he made immediately after the State finished its closing argument. However, by waiting for the State to finish its closing, Valdez did not timely object and failed to preserve error for appeal with respect

to the trial court's denial of his motion for mistrial. *See Valencia v. State*, 946 S.W.2d 81, 82-83 (Tex. Crim. App. 1997); *see also* Tex. R. App. P. 33.1.

## CONCLUSION

We affirm the judgment of the trial court.

Karen Angelini, Justice

Do not publish