

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-20-00026-CR
_____

BURNCHES MARKISH MITCHELL, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1493925D; Honorable Scott Wisch, Presiding

September 3, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, Burnches Markish Mitchell, appeals from his conviction by jury of the offense of capital murder[1] and the resulting sentence of imprisonment for life without the

---

[1] TEX. PENAL CODE ANN. § 19.03(a)(2); (b) (West 2020).

possibility of parole.[2]   He challenges his conviction through one issue, arguing the evidence was insufficient to support his conviction because the State failed to present evidence proving he possessed the specific intent to kill the victim.  We disagree and affirm the judgment of the trial court.[3]

**BACKGROUND**

Appellant was charged via indictment with "intentionally caus[ing] the death of Khrystophir Scott, by shooting Khrystophir Scott with a firearm, and the said Defendant was in the course of committing or attempting to commit the offense of robbery."  Appellant pleaded not guilty, and the matter was tried before a jury.

At trial, evidence was presented to show that in early 2017, three men, including Appellant, committed a series of at least twelve robberies.  The men targeted small neighborhood convenience stores.  Two of the three men would enter each store wearing masks, gloves, and dark clothing while the third waited in a car as the lookout and driver.  Appellant usually wore a red bandana as a face covering when he committed the robberies.[4]  No one was killed in any of the robberies until the robbery leading to the prosecution of the matter now before us.

---

[2] The jury answered "yes" to special issues one and two, made an affirmative deadly-weapon finding, and sentenced Appellant to serve life without parole in the Institutional Division of the Texas Department of Criminal Justice.

[3] Originally appealed to the Second Court of Appeals, sitting in Fort Worth, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts.  TEX. GOV'T CODE ANN. § 73.001 (West 2013).  Should a conflict exist between precedent of the Second Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court.  TEX. R. APP. P. 41.3.

[4] According to the record, police considered Appellant to be the leader of these men.

2

At about 8:15 p.m. on January 27, 2017, several people were inside a Quick Sak convenience store in Fort Worth. Among those people was the twenty-seven-year-old victim, Khrystophir Scott. At the time of his death, Scott was a cashier and stocker at a 7-Eleven convenience store in west Fort Worth. Scott had been born very prematurely and as a result, had significant physical impairments and functioned mentally at the level of a young teenaged boy.[5] Part of Scott's evening routine was to stop at the Quick Sak on his way home from work. When he stopped that night, he spoke with the cashier who knew the "regulars" well. As they spoke, the cashier began ringing up Scott's purchase. Just as he started, he saw two men, one shorter and one taller, dressed in dark clothing with their faces covered, run into the store carrying handguns. Both men yelled "get down" as they rushed toward the customers. The shorter man pointed his gun at the cashier and demanded money. Appellant ordered the customer next to Scott to get down onto the floor. That customer and the others in the store obeyed the robbers' commands. Scott, however, did not.

Scott explained that he had "plastic knees" and refused to get down onto the floor. The robbers then decided to take his wallet. At one point, Scott grabbed for the other robber's gun. Appellant's gun was pointed at Scott's head. Shortly thereafter, two gunshots rang out and Scott fell to the floor. He sustained a gunshot wound to the base of his neck. The robbers ran out of the store. Two people rushed to give Scott aid, and another called police. A few minutes later, Sergeant Robert Austin arrived at the store. Ten minutes later, a paramedic arrived and concluded Scott was in critical condition.

---

[5] Scott's sister testified "he was always going to be a child of about 14 or 15 mentally and emotionally."

3

Scott was transported to a hospital in Fort Worth where he died a week later from complications arising from the gunshot. The medical examiner testified the manner and means of Scott's death was homicide by gunshot wound.

On February 1, 2017, Appellant was arrested after an attempted armed robbery of a Dollar General in Commerce, Texas. Appellant conceded his role in the string of robberies and admitted he shot Scott during the January 27, 2017 robbery. He first said he shot Scott because he was fighting with the other robber but later said he shot Scott because he would not comply with their demands. Appellant was tried for the offense of capital murder. His defensive theory at trial was that while he did shoot Scott, thus causing his death, he did not intentionally murder him and therefore could not be guilty of capital murder. At the close of the evidence, Appellant was convicted as charged and sentenced to serve life in prison without the possibility of parole.

**ANALYSIS**

Through one issue, Appellant argues the evidence was insufficient to support his conviction because the State failed to present sufficient evidence that he possessed the specific intent to kill Scott.

**APPLICABLE LAW AND STANDARD OF REVIEW**

We review the sufficiency of the evidence to support a conviction under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). When examining the sufficiency of the evidence, appellate courts view the evidence in the light most favorable to the verdict. This requires the reviewing court to defer to the jury as the

4

sole judge of the credibility of witnesses and the weight to be given their testimony, giving "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. A reviewing court must therefore determine whether the necessary inferences are reasonable based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007)). This standard applies equally to circumstantial and direct evidence. *Laster v. State*, 275 S.W.3d 512, 517-18 (Tex. Crim. App. 2009).

When the record supports conflicting inferences, a reviewing court presumes that the fact finder resolved the conflicts in favor of the verdict and defers to that determination. *See Jackson*, 443 U.S. at 326; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). After applying this analysis, if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, then the evidence is sufficient. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 895.

A person commits capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit robbery. TEX. PENAL CODE ANN. § 19.03(a)(2). One manner of committing robbery is if, in the course of committing theft, a person intentionally, knowingly, or recklessly causes bodily injury to another. *Id.* at § 29.02(a)(1) (West 2020). Theft is defined as unlawfully appropriating property with the intent to deprive the owner of the property. *Id.* at § 31.03(a) (West 2020).

5

In the case of capital murder committed in the course of a robbery, there is no requirement that the intent to cause death be premeditated or formulated prior to the commission of the robbery. *Ayala v. State*, 267 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Rousseau v. State*, 855 S.W.2d 666, 674 (Tex. Crim. App. 1993)). Instead, the intent to cause death must only have been formulated when the actor commits murder. *Ayala*, 267 S.W.3d at 432 (citation omitted). In a sufficiency review, the jury's inference of intent is afforded more deference than the evidence supporting proof of conduct. *Id.* (citing *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000)). That is, circumstantial evidence of a defendant's guilty knowledge is not "required to meet the same rigorous criteria for sufficiency as circumstantial proof of other offensive elements." *Ayala*, 267 S.W.3d at 432 (citation omitted). In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, a reviewing court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Ayala*, 267 S.W.3d at 432 (citing *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991)).

### APPLICATION

On appeal, Appellant readily admits that he, along with the other robbers, was part of a ruthless band of thieves, but he maintains they were not murderers. He argues that Scott's physical and mental limitations caused him to be unable to comprehend the danger he was in when he refused to obey commands and when he grabbed the other robber's gun. Appellant reacted to that by shooting Scott at the base of the neck. He contends the "gun likely discharged as the result of a sympathetic trigger pull" because

6

Scott was fighting with the other robber and asserts that the "bullet did not strike a vital organ," indicating Appellant was not trying to kill him. Appellant further points to the fact that Scott lived for eight days before succumbing to the injury. Appellant argues that "it is highly possible that but for Scott's comorbidities he would have survived."

Appellant thus asserts that the "evidence supports the theory that Appellant's act of firing the weapon in Scott's direction was knowing, but not intentional . . . ." Specifically, he points to the following facts as support for his position: (1) he did not aim his handgun at Scott's head and pull the trigger but rather, the bullet hit the base of Scott's neck; (2) while he shot at Scott, it was not his conscious objective or desire to cause his death; (3) during his interview with police, he asked the detective several times whether Scott died and appeared "genuinely shocked and saddened" when informed that he did; and (4) the location of the wound, the date of death eight days after the shooting, and Scott's physical and mental limitations all "screech lack of intent."

The record in this case is quite lengthy. A small portion of the testimony and evidence sheds light on Appellant's specific intent to murder Scott. From it, we conclude the jury could have reasonably surmised Appellant possessed the specific intent to kill Scott.

The record shows Appellant and the other robber entered the Quick Sak at night with guns. Both were wearing clothing stereotypically utilized in criminal conduct of this nature and both were waving their guns and shouting to patrons to get on the floor. Appellant admitted in an interview with police that his gun was loaded because, according

to him, an unloaded weapon is useless. Appellant had also criticized the other robber for bringing a small gun with only one bullet in the chamber.

A responding paramedic testified he spoke to Scott at the scene. Scott told him "he was struck on the head and then shot[.]" The paramedic testified that under state requirements, he is required to list certain information, including the type of injury and whether it was intentional or accidental and whether it was assaultive. In this case, based on what Scott told him at the scene, the paramedic listed the mechanism of injury as "assault," that it was "intentional," and the type of injury as "penetrating." However, the paramedic agreed that he was not insinuating to the jury that he had any personal knowledge of whether someone intentionally killed Scott. He simply agreed that "based on what the victim told [him] that there was an intentional act[.]" Thus, we turn to an examination of the other evidence in the record to determine whether sufficient evidence supported a finding that Appellant possessed a specific intent to kill Scott.

At the outset, we note that Appellant's use of a firearm, a deadly weapon per se, is evidence from which the jury could have inferred a specific intent to kill, "unless in the manner of its use it is reasonably apparent that death or serious injury could not occur." *Ayala*, 267 S.W.3d at 432 (citing *Medina v. State*, 7 S.W.3d 633, 637 (Tex. Crim. App. 1999)). Appellant's use of the firearm during an armed robbery, pointed at Scott, was a "manner of use" in which death or serious bodily harm was a likely result. Threatening Scott to get down, attempting to take his wallet while pointing a gun at him, and admitting he shot Scott because he was wrestling with the other robber supports a finding that Appellant acted with a specific intent to kill. *See Ruffin v. State*, 270 S.W.3d 586, 591 (Tex. Crim. App. 2008) (a jury may infer that a criminal defendant intended the natural

8

consequences of his acts). Moreover, while an inference that death was intended because a deadly weapon was used may be rebutted by the defendant's own statement, merely presenting a different version of the events does not render the evidence supporting the jury's finding insufficient. *Ayala*, 267 S.W.3d at 432 (citing *Anderson v. State,* 701 S.W.2d 868, 872 (Tex. Crim. App. 1985)). Appellant's version of the story is he pulled the trigger but did not intend to kill Scott when he did so. However, as the trier of fact, the jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony.[6] *Ayala*, 267 S.W.3d at 432 (citing *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim. App. 1999); *Bargas v. State,* 252 S.W.3d 876, 887 (Tex. App.— Houston [14th Dist.] May 13, 2008, no pet.)).

Other evidence also supports the jury's finding. The cashier at the Quick Sak testified that during the robbery, Appellant had his gun "pointed at [Scott's] head." The cashier told the jury he saw Scott and the second robber "struggling with the gun." Appellant "was pointing the gun towards Scott over and over and over again and told him to get down on the ground." The cashier then heard two shots "back to back."[7] Appellant admitted he was the person who shot Scott and admitted he shot him in the neck. A patron of the store the evening of the robbery testified that Scott refused to get down when commanded to do so by the robbers. He said he himself obeyed the commands because "[a] guy is pointing a loaded gun at me; I wanted to get down . . ." because something bad might happen to him. He believed it was "a good possibility" he might also

---

[6] We note also that for the evidence to be sufficient, "the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (citations omitted).

[7] The record indicates one bullet came from a .22 caliber weapon and one bullet came from a 9mm weapon.

9

be shot. He said he heard the second robber tell Appellant to "get [Scott's] wallet" and at that time, Scott went for the first robber's gun. He described it as Scott's grabbing the robber's wrist and then arm. "The arm and gun swings down here. They're wrestling over it. It goes down and then I'm laying right here. He's pointing at me while I'm looking up." The patron scooted back and heard a gunshot. He then heard a second gunshot.

Appellant's actions after the shooting also support the jury's finding that he possessed the specific intent to kill Scott. A patron of the store said everything was silent following the gunshots. The people in the store then realized the robbers were gone and Scott had been "shot in the neck, head area." An officer testified Scott had been shot with a "small caliber" weapon. Even though Appellant knew he had shot Scott, he did not seek medical attention for Scott but rather ran away. Further, Appellant did not report the shooting. Both of these circumstances are of the type from which the jury could have inferred he possessed a specific intent to kill Scott. *See Evans v. State*, 440 S.W.3d 107, 113 (Tex. App.—Waco 2013, pet. ref'd) (finding sufficient evidence of specific intent to kill when defendant did not seek medical help, did not report the shooting, and did not show remorse); *Wilkerson v. State*, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994) (finding sufficient evidence of specific intent to kill when defendant left the scene of the robbery without seeking medical attention for the man he shot).

Several of Appellant's recorded statements also support a finding that the jury could have found Appellant possessed the specific intent to kill Scott. One of those statements occurred during a jail phone call and shows Appellant said "[s]ee what happened was that dude that I shot in the store, he was wrestling with my homeboy trying

10

to take his gun.  So I shot him."[8]  Another statement also occurred in the context of a jail phone conversation. The other person said, "[Y]ou know they gone get you with capital murder right?"  Appellant responded, "I ain't tripping.  I ain't doing no tripping sh*t I did the sh*t."  In yet another jail phone conversation Appellant said, "[W]ell you know even though I shot that dude at that store with the gun that I had used for that robbery in Commerce man they wouldn't never known to uh . . . match that gun no way off in Forth Worth" if another man had not told police about it.   All of these conversations show a consciousness of criminal responsibility and a lack of remorse, factors the jury could use to infer an intent to kill.

Further, Appellant's arguments that the evidence is insufficient to show he possessed specific intent to kill Scott or that he rebutted the presumption of a specific intent to kill are unpersuasive.  In particular, Appellant asserts that he shot Scott in the neck, not the skull.  He also points to the fact that Scott did not die immediately but rather died several days later. Finally, he argues that Scott's physical and mental limitations "screech lack of intent."  Appellant does not explain how any of these conditions support his position and we cannot find such support.  We find none of these circumstances show a lack of specific intent to kill nor do they sufficiently rebut the presumption.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant

---

[8] We acknowledge Appellant also said he did not want to hurt anyone and that is why he never shot anyone previously.  He said he shot Scott because he was not cooperating.

possessed a specific intent to kill Scott.  As such, we resolve Appellant's sole issue against him.

**CONCLUSION**

Having overruled Appellant's sole appellate issue, we affirm the judgment of the trial court.


Patrick A. Pirtle
Justice


Do not publish.