**Affirmed and Majority and Dissenting Opinions filed April 16, 2024.**



In The

# Fourteenth Court of Appeals

## NO. 14-22-00561-CR

**VICTOR HUGO CUEVAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 17-DCR-078884**

## M A J O R I T Y   O P I N I O N

Appellant Victor Hugo Cuevas appeals his conviction and sentence for murder. He raises fourteen issues, including sufficiency of the evidence, evidentiary complaints, jury charge complaints, and prosecutorial misconduct. After a thorough review of the record, we overrule appellant's issues and affirm the trial court's judgment.

## Background

In July 2017, appellant and his friend, Milton Egbe, shot at a car driven by Osiekhuemen Omobhude, known as "Ose." Ose suffered two gunshot wounds and died. The State charged appellant with murder. Appellant claimed self-defense and pleaded not guilty, and the case proceeded to trial before a jury, which heard the following evidence.

Juan Garza was at a shopping center, intending to eat at one of the restaurants, Sushi Hana. Garza saw two motorcycles speed into the parking lot. The motorcycles were driven by appellant and Egbe. In Garza's opinion, the bikes were "extremely loud," louder than an average motorcycle. The motorcycles parked, and Garza saw a Hispanic male later identified as appellant talking to the driver of a parked car through the driver's window. The person in the car was Ose. Egbe stayed near the parked motorcycles, several parking spots away from Ose's car. Ose's car was "backed in" to its parking spot, meaning the front end of the vehicle was facing the parking lot.

Garza then heard a sound "like fireworks," "about five of them, one right after another." He saw appellant chasing after the car as Ose tried to drive away. Appellant had a "gun out in his right hand."

Bonifacio Benitez was walking through the parking lot when he heard "fireworks or gunshots." It was "[d]efinitely more than one [shot] and it was repetitive. It almost sounded like Black Cats, fireworks, that's how quick they were going." Benitez looked around and saw "[appellant] on the motorcycle and [it] looked like he was putting on gear calmly"; he "was putting on gloves or getting prepared to start and head out." Appellant was wearing "some type of skull mask," which Benitez thought bikers wore to "kind of block the wind." Appellant and Egbe drove out of the parking lot toward the nearby freeway.

2

Hoang Nguyen was working at Sushi Hana, which was in the immediate vicinity of the shooting. Nguyen did not see the shooting, but he heard it and then looked out the front door of the restaurant. He recognized appellant, who was a "regular customer" of the restaurant. Nguyen remembered appellant previously visiting the restaurant while openly carrying two guns. Nguyen saw appellant and the second motorcycle leave the parking lot, driving "fast."

Alexis Blanton was working at another restaurant, Buffalo Wild Wings, a short distance from Sushi Hana. She recalled a young man entering the restaurant, "frantic" and "looking for help." Blanton testified that the man, later identified as Ose, said that he had been shot and needed help. Ose then fell to the ground and "was unresponsive." Emergency responders transported Ose to a nearby hospital, where he was pronounced dead.

The medical examiner who performed the autopsy testified that Ose had been shot in the right side of his face and the back of his right shoulder. The bullet that entered Ose's back continued into his right chest cavity and perforated the upper and lower lobes of his right lung before entering his aorta. This bullet was recovered from Ose's body. Ose suffered critical blood loss and likely died within minutes of being shot. In the medical examiner's opinion, the manner of death was homicide.

Fort Bend County Sheriff's Office ("FBCSO") Detective David Williams was the lead investigator. He viewed the scene in front of Sushi Hana, as well as the scene at Buffalo Wild Wings. At the Sushi Hana location, officers recovered fourteen shell casings from two different caliber guns: seven .380 caliber shell casings and seven 5.7 caliber shell casings. The 5.7 caliber casings were recovered in the general area where Egbe was seen close to the parked motorcycles. The .380s were "in spots along there kind of almost as if [the shooter was] walking"

3

through the parking lot—i.e., where appellant was seen chasing after Ose's car. The bullet recovered from Ose's body was "consistent with a .380."

Ose's car was left running in front of Buffalo Wild Wings. Detective Williams saw what "appear[ed] to be bullet holes in the driver door glass" and in the passenger side windows. Specifically, there were four to five bullet holes in the front passenger window and one bullet hole in the rear passenger window. From the car, officers recovered a phone, later determined to be appellant's, and a loaded 9 mm handgun. A second phone, which was Ose's, was found on the ground next to the car. There was no evidence that the 9 mm handgun had been fired. Police also recovered two bags of marijuana from Ose's car.

Through investigative leads, Detective Williams determined appellant was a possible suspect. Officers executed a search warrant on appellant's house, where they found two motorcycles matching descriptions given by witnesses as those driven by appellant and Egbe on the night of the shooting. Officers recovered ammunition and guns from appellant's bedroom. The ammunition included .380 bullets and 5.7 bullets; however, none of the guns were .380 or 5.7 caliber. There was a safe in appellant's bedroom, which contained, in addition to guns and ammunition, a cloth bag with a white powder inside, several vacuum sealed bags with a leafy green substance, and a package of clear plastic bags.

During execution of the search warrant, investigators obtained surveillance video from appellant's stepfather. The video showed appellant and Egbe leaving the house on the night of the shooting and returning to the house. FBCSO Investigator Patrick Douglas testified that, after appellant and Egbe returned to appellant's house, "[appellant] appears to give a fist bump or a high-five with the other guy."

4

The State introduced evidence that, four days after the shooting, appellant's mom texted him, "I went to throw ur shit somhere farwe [sic]." A minute later, she texted, "Fare Awy," and shortly after, "I got ur Back." Appellant responded, "Stop texting me this lol."

Police arrested appellant and Egbe and charged both men with Ose's murder.

Appellant and Egbe testified in appellant's defense. According to appellant, he and Egbe were planning to eat at Sushi Hana and then go to a nearby shooting range. This assertion was called into question, however, when appellant admitted on cross-examination that they could not have eaten and then arrived at the shooting range before it closed.

Appellant also testified that he planned on selling marijuana to Ose. He texted Ose the time, place, and price for the drug deal. Appellant armed himself with a gun and gave a loaded 5.7 caliber handgun to Egbe. Egbe testified that he did not know if the gun was loaded when appellant gave it to him. Egbe denied knowing that appellant was armed or that appellant intended to sell drugs that night. Appellant testified that he carries a gun every day, including every time he sells drugs. Neither appellant nor Egbe had a license to carry a gun or to drive a motorcycle.

After parking the motorcycles in front of Sushi Hana, appellant told Egbe to wait while appellant walked to Ose's car. Appellant sat in the car on the passenger side with his backpack containing marijuana. According to appellant, Ose pressed a gun to appellant's head, choked him, took his phone and the marijuana, and then told him to "[g]et the fuck out." After stepping out of the car, appellant turned back to face Ose, who allegedly still pointed a gun at appellant. Ose asked, "Do

5

you have any bread." When appellant said he had no money, Ose said, "Stop playing with me. I will smoke you," and then he cocked his gun.

At this point, appellant closed the door, pulled out a handgun tucked into his waistband, and shot seven times at Ose's car. Ose drove away, initially heading toward the location where Egbe was waiting by the motorcycles. Egbe also shot at Ose's car.

Egbe testified that, when appellant was in Ose's car, he saw Ose put a hand to appellant's neck and a gun to appellant's head. Egbe then started looking in his backpack for his gun. He heard gunshots but did not know who was shooting. When he looked up, the car was heading toward him, so he shot at the car.[1] Egbe testified that he was scared for appellant's life and his own life.

Jesse Richey also testified in appellant's defense. Richey testified that he was at a friend's house two weeks before the shooting and met Ose for the first and only time. According to Richey, "Ose was telling me that he wanted to rob somebody named Victor. And whenever I tried telling him that it wasn't a good idea, that he should not do that, he said that he did not care and that Victor was an easy lick to him."

In its closing argument, the State presented this case as a drug deal that "went south," and that appellant intended to shoot and kill Ose. Appellant argued that Ose robbed appellant and threatened appellant with gun violence, and that appellant acted in self-defense.

The charge instructed the jury on murder, appellant's theory of self-defense, and law of parties. The jury found appellant guilty of murder. After a punishment trial, the jury found that appellant acted in sudden passion and assessed his

---

[1] There were no bullet holes to the front of the car or windshield.

punishment at eighteen years' confinement in the Texas Department of Criminal Justice, Institutional Division.

Appellant timely appealed.

## Analysis

Appellant presents fourteen issues for our review. We begin with his last issue, in which he challenges the sufficiency of the evidence supporting his conviction, because, if sustained, it would afford him the greatest relief. *See Guzman v. State*, 552 S.W.3d 936, 941 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. ref'd).

### A. Sufficiency of the Evidence

Appellant argues that the evidence is legally insufficient to support his conviction for murder because the State failed to prove that appellant, rather than Egbe, killed Ose.

We apply a legal sufficiency standard of review in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Under this standard, we examine all the evidence adduced at trial in the light most favorable to the verdict to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Temple*, 390 S.W.3d at 360; *Criff v. State*, 438 S.W.3d 134, 136-37 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). This standard applies to both direct and circumstantial evidence. *Criff*, 438 S.W.3d at 137. Accordingly, we will uphold the jury's verdict unless a rational factfinder must have had a reasonable doubt as to any essential element. *Laster v. State*, 275

S.W.3d 512, 518 (Tex. Crim. App. 2009); *West v. State*, 406 S.W.3d 748, 756 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

For evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with a defendant's guilt. *Cantu v. State*, 395 S.W.3d 202, 207-08 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Rather, a court considers only whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the jury's verdict. *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007). The "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt, even if every fact does not "point directly and independently to the guilt of the accused." *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

Appellant was charged with, and convicted of, murder. A person commits murder if, as relevant here, he: (1) intentionally or knowingly causes the death of an individual; or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code § 19.02(b)(1), (2). To obtain a conviction, the State must prove, inter alia, that the defendant is the person who committed the charged offense. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984); *Kromah v. State*, 283 S.W.3d 47, 50 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). Investigator Williams testified that the bullet recovered from Ose's body "was consistent" with a .380 caliber gun.[2] Seven .380 caliber shells were recovered in the area where appellant shot at Ose. The jury reasonably could have inferred that appellant shot Ose with a

---

[2] Appellant argues that this evidence "should have been excluded," but a reviewing court must consider all evidence the jury was rightly or wrongly permitted to consider. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

.380 caliber weapon with the intent to kill him and that the bullet from appellant's gun caused Ose's death, or that appellant intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused Ose's death. *See, e.g.*, *Smith v. State*, No. 01-19-00724-CV, 2020 WL 7062396, at *4 (Tex. App.—Houston [1st Dist.] Dec. 3, 2020, pet. ref'd) (mem. op., not designated for publication) (among other evidence, evidence that bullet that killed decedent was consistent with defendant's gun supported conviction for murder, either directly or as a party); *Farek v. State*, No. 01-18-00385-CR, 2019 WL 2588106, at *5 (Tex. App.—Houston [1st Dist.] June 25, 2019, pet. ref'd) (mem. op., not designated for publication) (same).

Further, appellant's flight from the scene, coupled with his mother's statement that she "threw [his] shit" somewhere far away, are additional indications of guilt. *See Jackson v. State*, 530 S.W.3d 738, 742 n.1 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("flight is circumstantial evidence of guilt"); *Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.) (holding that conduct after crime indicating defendant's consciousness of guilt is "one of the strongest kinds of evidence of guilt").

Having viewed the evidence in the light most favorable to the jury's verdict, we hold that the evidence is sufficient to support appellant's conviction for murder. Considering the circumstantial and forensic evidence and appellant's admission of his role in the shooting and his flight therefrom, the jury rationally could have found that appellant intentionally or knowingly caused Ose's death. "This was not a determination so outrageous that no rational trier of fact could agree." *Wirth v. State*, 361 S.W.3d 694, 698 (Tex. Crim. App. 2012). We overrule appellant's fourteenth issue.

## B.     Voir Dire

In his first issue, appellant argues that the trial court erred in overruling his objections to the prosecutor's alleged misstatements of self-defense law during voir dire. We review the trial court's ruling on an objection to a party's statement of the law during voir dire for abuse of discretion. *Parker v. State*, 792 S.W.2d 795, 798-99 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd).

The first challenged statement is the prosecutor's comment that "self-defense becomes an issue, first, if the defendant says they did it and there is some evidence of self-defense." Appellant objected, arguing that a defendant "does not have to admit to the crime." At most, the prosecutor's statement is incomplete. Confession and avoidance is a judicially imposed requirement that requires defendants who assert a justification defense, such as self-defense, to admit, *or at a minimum to not deny*, the charged conduct. *Rodriguez v. State*, 629 S.W.3d 229, 231 (Tex. Crim. App. 2021); *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020) ("Self-defense is a confession-and-avoidance defense requiring the defendant to admit to his otherwise illegal conduct."). Although the prosecutor's statement may have been incomplete, we cannot say that it was incorrect. The trial court did not abuse its discretion in overruling appellant's objection.

The second challenged statement to the venire panel is the prosecutor's recitation of certain statutory elements regarding self-defense. The prosecutor said that, for deadly force to be justifiably deployed in self-defense, there must be an offense involving "some sort of weapon or some sort of extra force" and the defendant was "not engaged in criminal activity." Appellant objected, saying, "That's flat wrong. That's only if you want the presumption that it's reasonable." To this, the prosecutor responded, "Correct," and then said, "what I'm trying to

10

explain to the jury . . . are situations where deadly force is reasonable under the law."

Under Penal Code section 9.32, a person is justified in using deadly force against another if (1) the person would be justified in using force against the other under Penal Code section 9.31, and (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the person from the other's use or attempted use of deadly force, or to prevent the other's imminent commission of certain felonies. *See* Tex. Penal Code § 9.32(a)(2). The actor's reasonable belief that deadly force is immediately necessary is presumed in certain instances:

> (b) The actor's belief under Subsection (a)(2) that the deadly force was immediately necessary as described by that subdivision is presumed to be reasonable if the actor:
>
>> (1) knew or had reason to believe that the person against whom the deadly force was used:
>>
>>> (A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;
>>>
>>> (B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or
>>>
>>> (C) was committing or attempting to commit an offense described by Subsection (a)(2)(B);
>>
>> (2) did not provoke the person against whom the force was used; and
>>
>> (3) *was not otherwise engaged in criminal activity*, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

*Id.* § 9.32(b) (emphasis added).

Appellant contends that, during voir dire, the prosecutor repeatedly used the "not otherwise engaged in criminal activity" caveat to argue that a defendant is not entitled to a self-defense theory *at all* if he was engaged in criminal activity at the time of the alleged offense.

Even if we were to agree with appellant's characterization of the prosecutor's comments, we apply a harmless error analysis to a prosecutor's alleged misstatements of law during voir dire. *Thompson v. State*, 95 S.W.3d 537, 542 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (a misstatement of law during voir dire requires reversal only if appellant was harmed by the misstatement); *see also* Tex. R. App. P. 44.2(b) (stating harm analysis for non-constitutional error); *Glauser v. State*, 66 S.W.3d 307, 316 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (applying rule 44.2(b) harm analysis to error regarding prosecutor's voir dire statement). Here, the record shows that defense counsel had the opportunity to examine the venire panel about self-defense and to correct any misstatement of law, including the reasonable-belief presumption or the criminal-activity caveat, and the record further shows that defense counsel did precisely that. *See Penry v. State*, 903 S.W.2d 715, 741 (Tex. Crim. App. 1995) (considering defense counsel's opportunity to examine venire members in assessing harm from misstatement of law during voir dire). At the end of voir dire, defense counsel concluded by saying, "It's just a jury question: Was the force reasonably used at the time under the circumstances. That's what it is. It has nothing to do with the presumption. That's something different."

Lastly, appellant challenges certain alleged misstatements made during a bench conference. Because these statements were not made in front of the jury, any error is harmless. *Accord, e.g.*, *Becknell v. State*, 720 S.W.2d 526, 532 (Tex. Crim. App. 1986); *Norman v. State*, No. 14-11-00433-CR, 2012 WL 4163498, at

12

*18 (Tex. App.—Houston [14th Dist.] Sept. 20, 2012, pet. ref'd) (mem. op., not designated for publication) ("[A]ny misstatement was harmless because it was made outside the jury's presence and could not have influenced its verdict.").

Based on the record before us, we cannot say that the alleged misstatements of law had a substantial and injurious effect or influence in determining the jury's ultimate verdict. *See* Tex. R. App. P. 44.2(b).

We overrule appellant's first issue.

## C. Evidentiary Complaints

Appellant challenges several evidentiary rulings. We review a trial court's evidentiary rulings under the familiar abuse-of-discretion standard. *Henley v. State*, 493 S.W.3d 77, 82-83 (Tex. Crim. App. 2016).

### 1. DX-46

In his second issue, appellant contends the trial court erred by excluding Defense Exhibit 46, which is an audio recording of a phone call (occurring one week after the murder) between Ose's brother, Mike, and another male, who appellant identified as a high school friend. In the recording, Mike says that he and Ose had committed four robberies during the week preceding the shooting and that Ose was very "aggressive." Mike also discussed events allegedly occurring during the shooting, such as: that Ose "took down" appellant, who got out of Ose's car and then shot at Ose's car; that Egbe also shot at Ose's car; and that Ose managed to drive off. Appellant contends that this evidence was vital to his defense because it corroborated appellant's version of events on the night of the murder.

The State objected to the recording as inadmissible hearsay. *See* Tex. R. Evid. 801(d), 802. Appellant responded that the recording was admissible as a

13

statement against the declarant's interest under rule 803(24), which is the position he advances on appeal.  Tex. R. Evid. 803(24).

Rule 803(24) provides that the following is not excluded by the rule against hearsay, regardless whether the declarant is available as a witness:

> (24) Statement Against Interest.  A statement that:
>
>> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability or to make the declarant an object of hatred, ridicule, or disgrace; and
>>
>> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Appellant argues that the recording was admissible under this exception because Mike (the declarant) made a statement against penal interest by admitting to committing four robberies with Ose in the week preceding the murder.

The Court of Criminal Appeals has explained that statements against penal interest fall into three general categories:

> Some inculpate only the declarant (e.g., "I killed Joe."); others inculpate equally both the declarant and a third party, such as a co-defendant (e.g., "We killed Joe."); still others inculpate both the declarant and third party, but also shift blame by minimizing the speaker's culpability (e.g., "We robbed the bank, and Dan killed Joe, the bank teller.").

*Walter v. State*, 267 S.W.3d 883, 891 (Tex. Crim. App. 2008).

Statements that are directly against the declarant's interest and collateral "blame-sharing" statements may be admissible under Rule 803(24), if corroborating circumstances clearly indicate their trustworthiness.  *Id.* at 896.

14

The trial court is "obligated to parse a generally self-inculpatory narrative and weed out those specific factual statements that are self-exculpatory or shift blame to another." *Id.* at 897. "The rule requires courts to separate the dross of blame-shifting statements from the gold of self-inculpatory and blame-sharing statements, admitting only the latter." *Id.* at 886.

At most, Mike's statement about committing four robberies with Ose was admissible because it was a blame-sharing statement that could subject him to criminal liability and was supported by some corroborating evidence, namely that, according to Richey, Ose planned to rob appellant. But the remaining portions of the recording, including Mike's characterization of Ose as "aggressive" and Mike's description of the events on the night of the shooting, were not statements against Mike's interest and were thus not admissible under rule 803(24).

To the extent that the trial court erred by not admitting the brief portion of the recording discussing Mike's and Ose's involvement in prior, unrelated robberies, we conclude that any error is harmless. *See* Tex. R. App. P. 44.2(b). Erroneous exclusion of a defendant's evidence is generally non-constitutional error unless that evidence "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002). Appellant testified that Ose robbed him on the night in question and threatened him with a gun. Appellant testified as to Ose's demeanor and to his fear of Ose. Further, Richey testified that Ose said, approximately two weeks prior to the events in question, "that he wanted to rob somebody named Victor."

We conclude that Mike's excluded recorded statement that he and Ose had committed four robberies, assuming it was erroneously excluded, did not form such a vital portion of the case that exclusion prevented appellant from presenting

his defense to the jury. *See id.* at 666. Thus, appellant's substantial rights were not affected by any error. *See* Tex. R. App. 44.2(b). We overrule appellant's second issue.

### 2. Comment on exercise of *Miranda* rights

In his third issue, appellant argues that the trial court erred in admitting evidence constituting a comment on appellant's invocation of his *Miranda* rights.[3] *See Wainwright v. Greenfield*, 474 U.S. 284, 295 (1986) (commenting on a defendant's decision to invoke his right to remain silent after receiving *Miranda* warnings violates due process and infringes on the right against self-incrimination).

After law enforcement officers arrested appellant, FBCSO Sergeant Justin White warned appellant under *Miranda* in a recorded interview. Sergeant White testified that appellant acknowledged his rights. Further, and before Sergeant White asked questions about the murder, appellant signed a written waiver of his rights, which provided: "Prior to, and during the making of this statement, I knowingly, intelligently, and voluntarily waive the rights set out in this warning." Over appellant's objection, the State showed the jury a redacted version of the brief interview. Sergeant White asked appellant if he knew anything about the shooting, and appellant responded that he had seen it on the news. The record establishes that appellant then invoked his right to counsel, terminating the interview. That was the end of the recording. To the extent that appellant complains of the admission of the recording and Sergeant White's associated testimony, we hold that the trial court did not abuse its discretion in allowing this evidence. By signing the written waiver and briefly speaking with Sergeant White, appellant waived his post-arrest right to silence as to the limited conversation shown to the jury up until the time he invoked his right to counsel. *Garcia v. State*,

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

16

126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Sergeant White did not testify about any statement appellant made after requesting counsel and terminating the interview.

Appellant complains of two additional questions from the State: (1) during appellant's cross-examination, the prosecutor asked if he ever told police "where [he] put the guns used" in the shooting; and (2) the prosecutor also asked if appellant had ever told "the prosecutors" that he feared for his life during the altercation with Ose. Appellant objected to both questions, arguing that the questions infringed his post-arrest right to remain silent.

Regarding the first question, we are satisfied that the prosecutor inquired only into appellant's pre-arrest silence. The question, "did you ever tell the police where you put the guns used" in the shooting came during a discussion of the search of appellant's house, which occurred prior to appellant's arrest. Appellant testified that the gun he used to shoot Ose was "along with all of [his] other guns in a case" in the attic, underneath some insulation. Appellant admitted that he "saw the police go up there and check the attic." The prosecutor's inquiry whether he told police of the gun's location was not improper impeachment. *See, e.g.*, *Ayers v. State*, 606 S.W.2d 936, 940 (Tex. Crim. App. 1980) (en banc) (op. on reh'g) (holding that impeachment with pre-arrest silence is proper when the defendant in a murder case testified that he acted in self-defense and "blacked out," but did not assert those facts in his pre-arrest statement to police officers); *Marshall v. State*, 471 S.W.2d 67, 70 (Tex. Crim. App. 1971) (concluding that impeachment with pre-arrest silence is proper when the defendant in a murder case waived his right to remain silent at trial and testified that the homicide was an accident, but failed to tell the police the homicide was an accident before he was arrested).

Regarding the second question, we conclude that appellant did not preserve any error. During cross-examination, the prosecutor and appellant had the following exchange:

Q. Now, this is the first time that you have ever told anybody that you were in fear for your life, correct?

A. Incorrect, ma'am.

Q. Who did you tell?

A. All of my friends and family.

Q. I guess my question was bad.

Nobody, I guess, in -- like, you never told the prosecutors that, did you?

A. No.

Appellant's counsel then asked to approach the bench, where he objected.

A defendant must make a timely objection to preserve an evidentiary complaint on appeal. Tex. R. Ap. P. 33.1(a)(1); *Banda v. State*, 890 S.W.2d 42, 62 (Tex. Crim. App. 1994). A party must continue to object each time the objectionable evidence is offered. *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999). The failure to do so forfeits any right to complain of the trial court's action on appeal. *Cockrell v. State*, 993 S.W.2d 73, 89 (Tex. Crim. App. 1996). Thus, a defendant may waive a complaint of comment on post-arrest silence by failing to timely and properly object. *Wheatfall v. State*, 882 S.W.2d 829, 836 (Tex. Crim. App. 1994); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Salazar v. State*, 131 S.W.3d 210, 214 (Tex. App.—Fort Worth 2004, pet. ref'd). Prior to defense counsel's objection to the complained-of testimony, appellant had already answered a question about the "first time" he told anybody that he was in fear for his life on the night of the shooting. Thus, his later objection was untimely. *See Rojas v. State*, No. 05-09-00172-CR, 2010 WL

670242, at \*2 (Tex. App.—Dallas Feb. 26, 2010, pet. ref'd) (mem. op., not designated for publication) (objection to prosecutor's question, "This is the first time you've ever told this version, isn't it?" was untimely after defendant answered, "Yes, sir.").

Appellant had also testified similarly to the following without objection:

Q. Okay. Now, through this whole time you never called 911, did you?

A. No, ma'am.

Q. You never called the non-emergency number to the police, did you?

A. No, ma'am.

Q. You never went back to the scene and said, "Oh, my god. Let me tell you what happened. I almost died," did you?

A. No, ma'am.

. . .

Q. At any point in time after the shooting, Mr. Cuevas, did you tell [one of appellant's friends] what had happened?

A. No, ma'am. I only told my mom when I was in Mexico [shortly after the shooting].

Q. So your mom is the only person who knows what happened?

A. I mean, at that time when I was in Mexico, I told my mother; and we called my dad; and that's when we arranged to get a lawyer; and I was going to turn myself in.

Q. Was that before or after you saw what happened on the news?

A. When I was in Mexico, I looked up the news; and I saw the article. So I told my mother. I told her.

Q. Okay. Did you tell anybody else?

A. Not that I am aware of. I believe that I told my mother, and we called my dad, and I told my dad.

Q. You didn't tell Georgie, your wife?

19

A. No, everybody knows. My friends and family know. They know what happened that day.

Q. They know what you told them, correct?

A. They know the truth.

Q. Do they know what you told them?

A. Yes, what I told them.

Considering the testimony that was already before the jury and counsel's failure to object to the specific complained-of question before appellant answered, we conclude that the issue has not been preserved for our review. *See Dinkens v. State*, 894 S.W.2d 330, 255 (Tex. Crim. App. 1995) (holding objection following answer untimely); *see also Rojas*, 2010 WL 670242, at *2.

We overrule appellant's third issue.

3. Evidence obtained during execution of search warrant

During the search of appellant's house, the police took photographs of drugs, scales, plastic baggies, guns, and ammunition. The court admitted these photos at trial. In his fourth issue, appellant complains that the photos are inadmissible character-conformity evidence under Texas Rule of Evidence 404(b).

Under rule 404(b), evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Tex. R. Evid. 404(b)(1). Such evidence may be admissible for another purpose, however, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Tex. R. Evid. 404(b)(2).

Appellant argues that the evidence was improperly offered to prove appellant's bad character in order to show that he was a criminal and that he acted in conformity with his criminal character on the occasion in question. According

20

to appellant, the State did not need the evidence because he did not contest that he was "engaged in a drug transaction in this case."

Two bags of marijuana were found in Ose's car, where he was shot. As part of its burden to prove appellant's guilt beyond a reasonable doubt, the State sought to establish that appellant was a drug dealer, that appellant always carried a weapon during drug deals, and that the murder took place during, and because of, a drug deal gone wrong. The evidence introduced from the search of appellant's house, which included firearms and additional items of drug-related paraphernalia, supported the State's theory. It does not matter that appellant did not "contest" his involvement in a drug deal; the State is entitled to prove its case as it sees fit. *See Tome v. State*, No. 14-21-00373-CR, 2022 WL 14205419, at *12 (Tex. App.— Houston [14th Dist.] Oct. 25, 2022, no pet.) (mem. op., not designated for publication) (citing *Old Chief v. United States*, 519 U.S. 172, 179 (1997) ("[T]he prosecution is entitled to prove its case by evidence of its own choice, . . . [and] a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.")).

The trial court did not abuse its discretion in overruling appellant's rule 404(b) objection to the evidence. *See, e.g.*, *Prewitt v. State*, 133 S.W.3d 860, 864-65 (Tex. App.—Amarillo 2004, pet. ref'd) (evidence defendant bought drugs from victim and sold them was admissible to establish motive in murder prosecution). We overrule appellant's fourth issue.

4. SX-282A and SX-341P

In his fifth and tenth issues, appellant argues that the trial court erred in admitting State Exhibits 282A and 341P, both of which were video excerpts of an already-admitted exhibit, State Exhibit 282. Exhibit 282 was a media download from appellant's cell phone and was admitted without objection.

21

To preserve a complaint for appellate review, a party must present the trial court with a timely request, objection, or motion stating the specific grounds for the desired ruling if those grounds are not apparent from the context and must also obtain a ruling. *See* Tex. R. App. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). For an objection to the admission of evidence to be timely, the appellant must have objected to the evidence, if possible, before it was actually admitted. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). Failure to object when there was an opportunity to do so generally waives error. *Burt v. State*, 396 S.W.3d 574, 577-78 (Tex. Crim. App. 2013).

Appellant did not object when the State offered Exhibit 282 in its entirety. After Exhibit 282 was admitted, appellant objected only when the State offered particular video excerpts of Exhibit 282 as discrete exhibits. Because appellant failed to object to Exhibit 282 when he had the opportunity to do so, he failed to preserve his appellate complaints to the subsequent admission of Exhibits 282A and 341P. *Gutierrez v. State*, 585 S.W.3d 599, 613, 614-15 (Tex. App.—Houston [14th Dist.] Aug. 20, 2019, no pet.) (appellant waived complaint that portion of previously admitted exhibit was played to jury when appellant did not object to the complete exhibit when it was offered); *Gonzalez v. State*, No. 11-16-00140-CR, 2017 WL 3194459, at *3 (Tex. App.—Eastland July 27, 2017, no pet.) (mem. op., not designated for publication); *Daugherty v. State*, 652 S.W.2d 569, 575-76 (Tex. App.—Fort Worth 1983, pet. ref'd).

We conclude that appellant did not preserve his challenge to the admission of Exhibits 282A and 341P. We overrule appellant's fifth and tenth issues.

## D. Jury Charge

In his sixth, seventh, and eighth issues, appellant presents several jury charge complaints. We first determine whether error exists in the charge and, if

there was error, whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005). If charge error exists, there are two standards of harm depending on whether appellant timely objected. When, as here, a defendant timely objects to alleged jury-charge error, the record need only show "some harm" to obtain relief. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). Harm is assessed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.*

1. Burden of proof

In the first part of his sixth issue, appellant argues that the charge "could be read" to shift the burden to the defense to prove beyond a reasonable doubt that appellant acted in self-defense. The charge read:

> If you find from the evidence *beyond a reasonable doubt* that at the time and place in question the defendant did not reasonably believe he was in danger of serious bodily injury, or that the defendant, under the circumstances as viewed by him from his standpoint at the time, did not reasonably believe that the degree of force actually used by him was immediately necessary to protect himself against Oseikhuemen Omobhude use or attempted use of unlawful deadly force, then you should find against the defendant on the issue of self-defense. (Emphasis added.)

The burden remained with the State to disprove self-defense beyond a reasonable doubt. *See Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018) (State bears burden of persuasion to disprove self-defense beyond a reasonable doubt). Appellant's argument is unmeritorious.

## 2. Provocation instruction

In the second part of his sixth issue, appellant challenges the submission of an instruction on provocation.

Under self-defense law, "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code § 9.31(a). One limitation on the right to self-defense is the doctrine of provocation, also known as "provoking the difficulty" or "provoking the attack." *See Elizondo v. State*, 487 S.W.3d 185, 196 (Tex. Crim. App. 2016); *Smith v. State*, 965 S.W.2d 509, 512 (Tex. Crim. App. 1998). One cannot provoke an attack and then claim self-defense in responding to it. This doctrine embodies a concept in criminal law that can act as a total bar against a defendant's right to self-defense. *Smith*, 965 S.W.2d at 512.

A charge on provocation is required when there is sufficient evidence (1) that the defendant did some act or used some words which provoked the attack on him, (2) that such act or words were reasonably calculated to provoke the attack, and (3) that the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other. *Id.* at 513. A provocation instruction should be submitted to the jury only "when there is evidence from which a rational jury could find every element of provocation beyond a reasonable doubt." *Id.* at 514. Our inquiry is whether "a rational jury could have found provocation beyond a reasonable doubt, viewing the evidence in the light most favorable to giving the instruction." *Id.* Each element is a fact question and may be established by circumstantial evidence. *Id.* at 513-19. The exact words said or action taken by the defendant causing the attack need not

24

be proven to the jury; rather the jury must merely be able to find that there were some provoking acts or words. *Id.* at 515.

The charge in this case provided the following instruction on provocation:

You are further instructed as part of the law of this case, and as a qualification of the law on self-defense, that the use of force by a defendant against another is not justified if the defendant provoked the other's use or attempted use of unlawful force, unless:

(a) the defendant abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and

(b) the other person, nevertheless, continues or attempts to use unlawful force against the defendant.

So, in this case, if you find and believe from the evidence beyond a reasonable doubt that the defendant, Victor Hugo Cuevas, immediately before the difficulty, then and there did some act, or used some language, or did both, as the case may be, with the intent on his, the defendant's, part, to produce the occasion for shooting Oseikhuemen Omobhude, and to bring on the difficulty with the said Oseikhuemen Omobhude, and that such words and conduct on the defendant's part, if there was such, were reasonably calculated to, and did, provoke a difficulty, and that on such account Oseikhuemen Omobhude attacked the defendant with deadly force, or reasonably appeared to the defendant to so attack him or to be attempting to so attack him, and that the defendant then shot Oseikhuemen Omobhude with a firearm, in pursuance of his original design, if you find there was such, then you will find against the defendant on the issue of self-defense.

On the other hand, if you find from the evidence that the acts done or language used by the defendant, if any, were not, under the circumstances, reasonably calculated or intended to provoke a difficulty or an attack by Oseikhuemen Omobhude upon the defendant, or if you have a reasonable doubt thereof, then in such event, the defendant's right of self-defense would in no way be abridged, impaired, or lessened, and, if you so find, or if you have a reasonable doubt thereof, you will decide the issue of self-defense in accordance with the law on that subject given in other portions of this

25

charge, wholly disregarding and without reference to the law on the subject of provoking the difficulty.

Appellant argues that there was no evidence to support the submission of an instruction on provocation.

We assume without deciding that the trial court erred by including the provocation instruction in the charge. Because appellant timely objected, he is entitled to a reversal if the record shows that he suffered "some harm" as a result of the inclusion of the instruction. *Almanza*, 686 S.W.2d at 181. If including a provocation instruction was "calculated to injure the rights" of appellant, reversal and a new trial must be ordered. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013). Neither appellant nor the State has the burden with regard to showing or proving harm. *Elizondo*, 487 S.W.3d at 205. We must make our own assessment as to whether harm occurred. *Id.* In determining whether appellant suffered "some harm," we must look at: (1) the jury charge as a whole; (2) the arguments of counsel; (3) the entirety of the evidence; and (4) other relevant factors present in the record. *Almanza*, 686 S.W.2d at 171. To say that some harm occurred, we must conclude that appellant "suffered some actual, rather than merely theoretical, harm from the error." *See Elizondo*, 487 S.W.3d at 205 (quotation omitted).

a. Jury Charge as a Whole

We first consider the entire jury charge. The charge begins by explaining the indicted offense and defining in the abstract the offense of murder and other relevant terms. Bypassing consideration of the self-defense section for now, the charge concludes by explaining the law relating to law of parties, the presumption of innocence, the State's burden of proving each and every element of the charged offense beyond a reasonable doubt, and that the indictment is not evidence of guilt.

These correctly drafted sections weigh against a finding of some harm.

In the middle of the charge is a self-defense instruction, which includes the sentence, "The defendant's belief that the deadly force was immediately necessary is presumed to be reasonable if the defendant . . . did not provoke the person against whom the force was used."

Immediately after the self-defense instruction is the provocation instruction, quoted above.

The Court of Criminal Appeals has said that the abstract paragraph is "clear as a bell," *Reeves v. State*, 420 S.W.3d 812, 819 (Tex. Crim. App. 2013), but the two application paragraphs are incomprehensible. *Id.* at 818. And, because the instructions are not understandable, we do not apply the usual presumption that the jury understood and applied the court's charge in the way it was written. *Id.* at 818-19.

In *Reeves* and *Elizondo*, the erroneous provoking-the-difficulty charge immediately followed the charge on self-defense—making it more likely that the jury's attention was drawn to the provocation theory in rejecting the defendant's claim of self-defense—and was the last substantive instruction in the charge. *Elizondo*, 487 S.W.3d at 208; *Reeves*, 420 S.W.3d at 819. This placement of the erroneous instruction within the charge, the Court of Criminals concluded, likely magnified its harm. *Elizondo*, 487 S.W.3d at 208; *Reeves*, 420 S.W.3d at 819.

In the present case, the provocation instruction also immediately follows the self-defense instruction but, significantly, is not the last substantive instruction in the trial court's charge. Furthermore, as discussed below, the State did not rely on a provocation theory.

Although the provocation instruction is unwieldy in its length, complexity, and coherence, appellant does not indicate any part of it that is legally incorrect. Nonetheless, we will consider that this first factor weighs slightly in favor of a

27

finding of some harm, given that the Court of Criminal Appeals "denounced" the similarly worded provocation instruction "in its entirety" in *Reeves*. *Elizondo*, 487 S.W.3d at 208 (citing *Reeves*, 420 S.W.3d at 818).

### b. Arguments of Counsel

During the State's closing argument, the prosecutor did not refer to provocation even passingly. Appellant's counsel did, telling the jurors, "So provocation, there's nothing, nothing in the evidence whatsoever that shows he provoked this difficulty causing Ose to pull out the gun." Given the State's silence on the issue, and defense counsel's argument, it is unlikely that the jury placed any weight on the provocation instruction. *Cf. Reeves*, 420 S.W.3d at 820 ("The SPA argues that, because there was no evidence that appellant provoked the encounter, the jury must have ignored the erroneous instruction. Not in this case, not with the prosecutor's argument.").

This factor weighs against a finding of some harm.

### c. Entirety of the Evidence

Appellant testified to facts that, if believed, could have supported his self-defense claim. However, other witnesses testified to another set of facts that, if believed, supported appellant's conviction for murder. As an appellate court, we will not weigh in on this fact-specific determination, as that is a function reserved for a properly instructed jury. *See id.* We do, however, note that the circumstantial evidence of appellant's guilt was substantial. We also note that the charge properly instructed the jury to decide the issue of self-defense without reference to the law on provocation, if the jurors believed that appellant did not provoke the encounter. This factor weighs against a finding of some harm.

28

d. Other Relevant Evidence Contained in the Record

It is relevant to the harm analysis that the provocation instruction potentially undermined appellant's sole defensive theory of self-defense. *Id.* at 820-21. However, an erroneously included provocation instruction is not necessarily harmful even when self-defense is the only defensive theory; it simply goes on the "some harm" side of the scale rather than the "no harm" side. *Id.* at 821.

Having reviewed the entire record in light of the *Almanza* factors, we conclude that the trial court's inclusion of the provocation instruction was harmless. The focus of the evidence and argument was on "the credibility of a man who would shoot someone in the back and come here and say it was self-defense"—not on a provocation theory. According to the prosecutor, credibility and the purported reasonableness of appellant's belief that he was in danger were the critical inquiries in this case. *See, e.g.*, *Benaffane v. State*, No. 01-15-00840-CR, 2017 WL 2117538, at *9 (Tex. App.—Houston [1st Dist.] May 16, 2017, pet. ref'd) (mem. op., not designated for publication) ("no actual likelihood" that erroneous inclusion of instruction in charge harmed defendant when the issue was not a focus in the trial and defense counsel correctly told the jury that the facts did not support the instruction); *accord also Engel v. State*, 630 S.W.3d 192, 204 (Tex. App.—Eastland 2020, no pet.) (erroneous inclusion of provocation instruction did not result in egregious harm when the State did not rely on provocation); *Polk v. State*, No. 13-18-00347-CR, 2019 WL 3721345, at *7 (Tex. App.—Corpus Christi Aug. 8, 2019, pet. ref'd) (mem. op., not designated for publication) (same).

3. Presumption of reasonableness

As discussed above, in certain instances a defendant is entitled to a presumption that he reasonably believed the use of deadly force was immediately necessary; but a defendant is not entitled to such a presumption when he was

"otherwise engaged in criminal activity" at the time. *See* Tex. Penal Code § 9.32(b). The jury charge included a statement of the law on this presumption:

> The defendant's belief that the deadly force was immediately necessary is presumed to be reasonable if the defendant knew or had reason to believe that the person against whom the deadly force was used: unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment; unlawfully and with force removed, or was attempting to remove unlawfully and with force, the defendant from the defendant's habitation, vehicle, or place of business or employment; or was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery; and the defendant did not provoke the person against whom the force was used; and the defendant was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

In the third and final part of his sixth issue, appellant argues, and we agree, that the presumption of reasonableness was not applicable and should not have been included in the jury charge because it is undisputed that he was engaged in criminal activity—namely, a drug deal—when he shot Ose.

When the "evidence conclusively establishe[s] that [the defendant] was engaged in criminal activity at the time he used deadly force," the presumption of reasonableness instruction is "not the law applicable to the case." *Reyna v. State*, 597 S.W.3d 604, 607 (Tex. App.—Houston [14th Dist.] 2020, no pet.). If, as is the case here, the error in the charge was the subject of a timely objection in the trial court, then reversal is required if there was some harm to the accused from the error. *Almanza*, 686 S.W.2d at 171. A reversal is required if the accused has suffered any actual, rather than theoretical, harm from the error. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). If the record does not show actual harm, the charging error will not result in a reversal of the conviction. *See Abdnor*

*v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). With this in mind, we again turn to the familiar *Almanza* factors. *Almanza*, 686 S.W.2d at 171.

Factor one, the error in light of the entire jury charge, weighs against a finding of harm. The abstract portion of the charge correctly stated the law regarding the presumption. The application paragraph of the charge did not refer to the presumption and instead instructed the jurors to find in appellant's favor if they found that

> it reasonably appeared to [appellant] that his life or person was in danger and there was created in his mind a reasonable expectation of fear of death or serious bodily injury from the use of unlawful deadly force . . . and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself . . . he shot Oseikhuemen Omobhude.

Thus, notwithstanding the inclusion of the presumption in the abstract portion (which was correctly stated), the application portion of the charge correctly stated the law regarding self-defense generally without mentioning the presumption. *See Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012) (the charge's application paragraphs, not the abstract portion, authorize a conviction).

Factor two, the state of the evidence, also weighs against a finding of harm. There was more than sufficient evidence from which the jury could find that appellant committed murder and did not act in self-defense. As already discussed, appellant dictated the time and place for the drug deal and arrived, armed, with an accomplice. He shot at Ose's car numerous times, following Ose as Ose attempted to drive away. An eyewitness, Benitez, testified that appellant appeared calm after the shooting. Appellant and Egbe then fled the scene; upon returning to appellant's house, he appeared to high-five or fist-bump Egbe, indicating success

31

or victory. *See Aguilar-Motino v. State*, No. 01-08-00527-CR, 2009 WL 3321418, at *3 (Tex. App.—Houston [1st Dist.] Oct. 15, 2009, pet. ref'd) (mem. op., not designated for publication) (highlighting evidence of defendant's conduct after stabbing victim when concluding that jury could reasonably decide that defendant committed aggravated assault and reject self-defense claim). The only evidence that Ose threatened appellant came from appellant himself and Egbe, and the jury was free to disbelieve that self-serving testimony. *See Sifuentes v. State*, 615 S.W.3d 914, 919 (Tex. Crim. App. 2021).

Factor three, the jury arguments, is the focus of appellant's complaint. He points to the prosecutor's statements during closing argument:

> Now, like so many things that have happened in this trial with Mr. Cuevas, he wants to have it both ways, right? He wants to come in here and look nice and pretty and say poor me and kind of cry. I'm not a murderer. I never meant to murder anybody. That's what he said. Right?
>
> Problem is he can get up there and tell you guys: I didn't mean to do it. I'm not that kind of a person. But just in case y'all don't believe that, I did it in self-defense. Right?
>
> He doesn't get that right. Y'all have to believe the defendant did what he did, right?
>
> . . .
>
> Mr. Elliott talked about the presumption a little bit and I don't want you guys to get confused because it is kind of a confusing area of the law, because you heard a lot about that, right? Victor Cuevas is a victim of aggravated robbery. Victor Cuevas -- Mr. Cuevas is a victim of robbery.
>
> Here's the problem. *He cannot use deadly force to protect against the imminent commission of aggravated robbery if he's also committing another crime.* You can't do it. And we know at the very least, right, he's committing aggravated assault. Deadly conduct, illegal possession of a firearm, delivery of marijuana, possession of marijuana, the list goes on. Right?

So he doesn't get it. He doesn't get there. There was no imminent commission of aggravated robbery because if taking his story as the truth, means the robbery was over. I don't think it's the truth, but we'll just give him the benefit of the doubt. Right?

If it's over, he doesn't get self-defense. Well, let's assume it's still going on in some world. He doesn't get it because he's committing other crimes. (Emphasis added).

We agree with appellant that the prosecutor misstated the law regarding the presumption of reasonableness, by telling the jury that appellant's commission of criminal activity precluded his self-defense claim rather than simply negating the presumption of reasonableness. This factor facially weighs in favor of a finding of harm.

We note, however, that appellant's counsel directly addressed the prosecutor's misstatement in closing argument:

And unlike what the prosecution told you back in voir dire that if you're committing a crime, you can't use self-defense. And y'all remember back then I was bouncing out of my chair like a Jack-in-the-Box screaming, saying that's not the law.

Guess what? I told you right. It's not the law. It does factor into a presumption, an assumption if you will. An instance in some situations in which you can sort of start in a different place other than the race line where everybody's at the same place.

. . .

We talked about -- back in voir dire, about the Castle Doctrine and how it gives you a presumption, if certain things are applicable. They're not applicable in this case, but because it's here we're going to talk about it. You can get a presumption of reasonable, otherwise your actions in shooting are presumed to be reasonable, which is like a head start.

Okay?

It's not starting on the same line, it's an assumption. You can assume that the deadly force is okay if certain things happen. And

33

those certain things are -- and the list is all there -- basically you'll see them in the list and y'all can go back and read them.

Is if like you're in your home or your car or something like that, not doing anything illegal, someone tries to come in on you, you can shoot them dead. And the cops come out and go: Is that what happened? Yep. Okay.

We're going to presume it's good.

And the instructions to the jury will be the same thing. We're going to assume that there's no problem, everything is fine. That's a presumption. That's what this is explaining to you here, how a presumption works. I'm telling you it doesn't apply because Victor Cuevas was selling dope.

. . .

I'm not saying that you're supposed to be applying the presumption. I'm telling you he was committing a crime. We're not hiding that from you. So he doesn't get the presumption.

Counsel's argument ameliorated, at least to some degree, the prosecutor's misstatement. *Accord Pelcastre v. State*, 654 S.W.3d 579, 589-90 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd) (when defense counsel corrected previous misstatement, the parties' jury arguments did not weigh for or against finding of harm). Nonetheless, we agree that factor three slightly weighs in appellant's favor.

Finally, our review of the record does not reveal other information, such as jury notes indicating the jury was confused about the charge, for the fourth factor.

In light of all four factors, we conclude that the complained-of error was harmless. It is true that the court's charge erroneously included the presumption of reasonableness and, further, that the prosecutor erroneously stated the law regarding the presumption. But defense counsel corrected the prosecutor's misstatement, and the court repeatedly instructed the jurors that they were to follow the law as set out in the jury charge. The charge, as written, permitted the jury to find in favor of appellant's self-defense claim regardless of the applicability

or inapplicability of the presumption of reasonableness. The charge also permitted the jurors to find *against* appellant's self-defense claim if, for instance, they did not believe appellant's apprehension of fear was reasonable, regardless of the applicability or inapplicability of the presumption of reasonableness.

At most, appellant has identified purely theoretical, not actual, harm from the erroneous inclusion of the presumption instruction in the abstract portion of the charge. A jury is presumed to have understood and followed the court's charge, absent evidence to the contrary. *Crenshaw*, 378 S.W.3d at 467. The risk that a rational juror, following the instructions in the jury charge, would have convicted appellant on the basis that he was not entitled to a self-defense theory at all is not "remotely significant." *See French v. State*, 563 S.W.3d 228, 237-38 (Tex. Crim. App. 2018) (concluding that there was no harm resulting from jury charge error).

We overrule appellant's sixth issue.

4.  Refusing defense of third party instruction

In his seventh issue, appellant argues that the trial court erred by excluding from the charge an instruction on the defense of a third party. According to appellant, "[i]f the jury believed Egbe killed Omobhude, there was no charge language which would allow the jury to acquit Victor if it believed Egbe was shooting in self-defense or defense of Victor."

The "defense of third person" theory does not apply to appellant's prosecution in the manner he contends. The defense is stated in Penal Code section 9.33, which provides:

> A person is justified in using force or deadly force against another to protect a third person if:
>
> > (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or

9.32 in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and

(2) the actor reasonably believes that his intervention is immediately necessary to protect the third person.

Tex. Penal Code § 9.33.

This is a defense of confession and avoidance, and it applies when the defendant who is charged with the use of force or deadly force, here appellant, claims to have used that force to protect a third person against an unlawful use of force threatening the third person. *See Battles v. State*, No. 14-15-00775-CR, 2017 WL 89401, at *4 (Tex. App.—Houston [14th Dist.] Jan. 10, 2017, pet. ref'd) (mem. op., not designated for publication). "[A] defendant is justified in defending a third person if, under the circumstances as the defendant reasonably believes them to be, the third person would be justified in defending himself." *Henley v. State*, 493 S.W.3d 77, 89 (Tex. Crim. App. 2016). But, "[w]here there is no evidence that the deceased was making an attack or threatening an immediate attack upon a third party but was directed only toward appellant, the issue of defense of third parties is not raised." *Constancio v. State*, 643 S.W.2d 153, 156 (Tex. App.—Austin 1982, no pet.).

Appellant does not argue that he used deadly force to protect Egbe or another third person from the unlawful use of deadly force. Nor is there evidence that appellant used deadly force to protect any third persons. There is evidence that appellant fired his gun multiple times at Ose while chasing Ose's car, as Ose was driving away. It is undisputed that Ose's gun had not been fired.

As there is no evidence to support the instruction, the trial court did not err in omitting it from the charge. *See Kennedy v. State*, 193 S.W.3d 645, 653 (Tex. App.—Fort Worth 2006, pet. ref'd).

36

We overrule appellant's seventh issue.

### 5. Inclusion of law of parties instruction

In his eighth issue, appellant argues that the trial court erred by instructing the jury on the law of parties. According to appellant, if the jury had found that Egbe, not appellant, killed Ose, then it was error to instruct the jury that it could find appellant guilty of murder under the law of parties. Appellant says there was no evidence that appellant acted with the intent to assist in Egbe's murder of Ose or that appellant aided or attempted to aid that offense. Alternatively, appellant contends that, even if the evidence supported a law of parties instruction, the court's charge was wrong because the instruction was not included in the application section.

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. Tex. Penal Code § 7.01(a). A person is criminally responsible for an offense committed by the conduct of another if while "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2).

If there is sufficient evidence to support an appellant's guilt acting alone, however, any error in submitting an instruction on the law of parties is harmless. *Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986); *see also Magana v. State*, No. 11-18-00123-CR, 2020 WL 2214214, at *4 (Tex. App.—Eastland May 7, 2020, no pet.) (mem. op., not designated for publication). As we have held above with regard to appellant's fourteenth issue, we conclude there is more than sufficient evidence to support a guilty verdict against appellant based on his conduct alone, and therefore any error in submitting a law of parties instruction is

37

harmless. As discussed above, the forensic evidence, appellant's admission to shooting Ose, witness testimony establishing that appellant repeatedly fired his gun at Ose while following or chasing Ose's car, and appellant's flight from the scene all support the jury's verdict under the theory that appellant shot and killed Ose. Appellant has not shown that he was harmed by the law of parties instruction. *E.g.*, *Baker v. State*, No. 14-08-00047-CR, 2009 WL 838257, at *4-5 (Tex. App.— Houston [14th Dist.] Mar. 31, 2009, pet. dism'd, untimely filed) (mem. op., not designated for publication); *Black v. State*, 739 S.W.2d 638, 642-43 (Tex. App.— Dallas 1987, no pet.) (although prosecutor referred to law of parties in voir dire and closing, any error in charging jury on law of parties was harmless, where State's argument focused on defendant's guilt as a principal and evidence was sufficient to convict defendant under that theory).

We overrule appellant's eighth issue.

E. **Constraints**

In his ninth issue, appellant argues that the trial court violated his constitutional rights by revoking his bond and placing him in handcuffs, in view of the jurors, after the guilty verdict was announced. The jurors were then dismissed for the remainder of the day, with an instruction to return the following morning to begin the punishment phase. There is no indication that appellant was handcuffed at any other point during either the guilt-innocence phase or the punishment phase.

The United States Supreme Court has held that the appearance of a defendant in shackles before a jury during a trial may violate the defendant's Fifth and Fourteenth Amendment rights to due process. *Deck v. Missouri*, 544 U.S. 622, 629-34 (2005). The court reasoned that "[v]isible shackling undermines the presumption of innocence and the related fairness of the factfinding process[,] . . . can interfere with the accused's ability to communicate with his lawyer" and

38

"participate in his own defense," and "affronts the dignity and decorum of judicial proceedings that the judge is seeking to uphold." *Id.* at 630-31 (internal quotations omitted).

In *Deck*, the defendant objected to being shackled during the guilt-innocence phase of trial. At least two of our sister courts have held that shackling after guilt-innocence or during the punishment phase does not implicate the same concerns present in *Deck*. *See Jones v. State*, No. 09-15-00092-CR, 2015 WL 6998971, at *4 (Tex. App.—Beaumont Nov. 12, 2015, pet. ref'd) (mem. op., not designated for publication) ("[W]e conclude that the shackling of Jones during the punishment phase would not undermine the presumption of innocence."); *Lewis v. State*, 866 S.W.2d 272, 277 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) ("It must be noted that the only time the jury saw appellant in the custody of the bailiff was after the jury had made its decision. There is nothing in the record to show that appellant was restrained by handcuffs or shackles. Therefore, appellant's right to the presumption of innocence terminated after she was found guilty of murder.").

We tend to agree with our sister courts that appellant's handcuffing in court after the jury found him guilty did not violate his constitutional rights. Regardless, this is not an instance of prolonged constraint but rather a brief instance at the conclusion of the day's proceedings and after the jury found appellant guilty. Although a handcuffed or chained defendant should not be intentionally brought into court in the presence of the jury, it is not unreasonable for state officers to handcuff a defendant who is being transported to and from the courtroom. *Swanson v. State*, 722 S.W.2d 158, 162-63 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd). It is common for an accused to be inadvertently seen by jurors for short periods of time while he is under physical restraints. *Burleson v. State*, 646 S.W.2d 646, 646 (Tex. App.—Fort Worth 1983, no pet.). A brief and

fortuitous encounter of the defendant in handcuffs by jurors is not inherently prejudicial and requires an affirmative showing of prejudice by the defendant. *Id.*; *see also Swanson*, 722 S.W.2d at 162-63; *Garcia v. State*, 634 S.W.2d 888, 893 (Tex. App.—San Antonio 1982, no pet.).

On this record, we conclude that placing appellant in handcuffs for the brief period of time after the jury found him guilty and before the jury was dismissed does not constitute a violation of his due process rights. Rather, the jurors reasonably could have concluded that, after being found guilty, appellant was to be transported to jail and was handcuffed accordingly. *See Swanson*, 722 S.W.2d at 162-63. There is nothing in the record to affirmatively establish any prejudice resulting from this brief instance. Accordingly, we overrule appellant's ninth issue.

## F.    Jail Records

In his eleventh issue, appellant complains that the trial court erred in denying his motion for mistrial during the prosecutor's closing argument in the punishment phase. We review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *Archie v. State*, 340 S.W.3d 734, 738-39 (Tex. Crim. App. 2011).

Prior to punishment proceedings beginning, the State indicated that it intended to introduce appellant's disciplinary records from jail. Appellant objected, arguing that the State failed to properly give notice of any extraneous crimes and that the admission of the records violated appellant's constitutional right to confront any witnesses against him. The court overruled appellant's objection, allowing the records to be admitted but granting appellant a running objection to the jail records.

During closing argument, the prosecutor, referencing the disciplinary records, told the jury:

> While he's in and out of jail every time he does not follow the rules of the court. Seven times, refuses to obey an order of the court. Three times, killing or assault. Two times, possessing contraband.

Appellant did not object at this point, instead relying on his running objection to the admission of the jail records. After the jury was dismissed for deliberations, appellant moved for a mistrial. Counsel argued:

> The prosecutor got up there in front of this jury and said that three times this defendant was killing or assaulting an officer. It should have never been in. It's a constitutional dimension and she exponentiated it a hundred times over what should have never been placed into evidence.

The trial court denied the motion for mistrial. On appeal, appellant argues that the prosecutor made a "deliberately false misleading statement" because she knew that appellant did not kill anyone in jail.

Appellant's complaint on appeal—that the prosecutor deliberately misrepresented the content of the jail records—does not comport with his complaint at trial—that the jail records were inadmissible due to constitutional concerns. Because appellant did not preserve his appellate complaint, we overrule appellant's eleventh issue. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial).

## G. Improper Argument

In his twelfth issue, appellant argues that the court erred in denying his motion for mistrial on a second ground—the prosecutor's improper punishment jury argument.

"The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone, and not on any fact not admitted in evidence." *Milton v. State*, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019) (internal quotation omitted). "Proper jury argument includes four areas: (1) summation of the evidence presented at trial, (2) reasonable deduction drawn from that evidence, (3) answer to the opposing counsel's argument, or (4) a plea for law enforcement." *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). A proper plea for law enforcement may include arguing the relationship between the jury's verdict and the deterrence of crime in general, arguing that juries should deter specific crimes by their verdicts, and arguing the impact of the jury's verdict on the community. *See Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990).

While a prosecutor may make a plea for law enforcement, she may not, in contrast, "ask members of the jury to place themselves in the shoes of the victim." *Boyington v. State*, 738 S.W.2d 704, 709 (Tex. App.—Houston [1st Dist.] 1985, no pet.) (citing *United States v. Cook*, 592 F.2d 877 (5th Cir. 1979); *Chandler v. State*, 689 S.W.2d 332 (Tex. App.—Fort Worth 1985, no pet.)). Doing so essentially invites the jurors to abandon their objectivity. *Brandley v. State*, 691 S.W.2d 699, 712 (Tex. Crim. App. 1985).

In determining whether a prosecutor's statements were improper, we consider the remarks in the context in which they appear, examining the "entire argument, not merely isolated sentences." *Robbins v. State*, 145 S.W.3d 306, 314-15 (Tex. App.—El Paso 2004, pet. ref'd).

During closing argument, the prosecutor said:

> And from what you have seen from this defendant, I think it's probably pretty clear to all of you that there's just not anything redeeming about him. And it is scarier from what we have seen that he is so young and already doing so many bad things. He's chosen not to get better but to get worse. He has chosen a life of crime. Right?
>
> Kill or be killed is the life he lives. [Appellant] does not care about people in our society.
>
> Take it out of just Ose's life, right, if that's enough for you. Then when you go -- you probably have already thought of this, right? You go run errands in the evening time, when you're going out to eat with one of your friends or having some drinks, at any given moment if this defendant is out in our community *Ose could be you.*
>
> [Defense Counsel]: Objection, Judge, invading the -- placing the jury in the shoes, Judge. That's improper jury argument.
>
> THE COURT: Overruled.
>
> [Prosecutor]: At any given moment that night, July the 14th of 2017, any of those other families, small children, people out on date night, any of those people could have just as easily been Ose.
>
> So that's the question you guys have to answer, right? Is that a risk we want to take?
>
> Is the defendant living in prison safer for us or do we want to take a chance on him and let him out? Because he's had I don't know how many chances now. I don't know. Every time he gets out he does something else. I don't know how to fix that except to keep him in.

(Emphasis added.)

Focusing on the comment that the victim "could be you," appellant argues that the prosecutor urged the jurors to abandon their objectivity. However, when viewed in the context of the whole argument, we conclude that the prosecutor's comments constitute a permissible plea for law enforcement. We find the prosecutor's argument akin to a statement we analyzed in *Ayala*:

43

PROSECUTOR: Ladies and gentlemen, this is not a case about Jesus Ayala anymore as much as it is about a case about what kind of society you want to live in.

DEFENSE COUNSEL: Objection, Your Honor, that's improper.

THE COURT: Overruled.

PROSECUTOR: This is a case about what you want to allow on the streets of Houston. It is a case about what wild and crazy story someone can come in and tell a jury and they'll accept. And when you pass judgment on why there are bad people out there, you can look back on this case. You decide today what kind of society you want to live in, and what—

DEFENSE COUNSEL: Judge, I'm going to renew my objection. That's improper, talking about societal [sic], objection.

THE COURT: Overruled.

PROSECUTOR: You decide. And I submit to you that you'll never pull into a gas station again without thinking about Jesus Ayala, never again. I know I won't.

DEFENSE COUNSEL: Objection, Your Honor, that's improper.

THE COURT: Overruled.

PROSECUTOR: And I hope you also think of Carmen, and her children, and Juan, and the justice they're entitled to.

DEFENSE COUNSEL: Your Honor, that is improper, and I'm going to continue to object.

THE COURT: Overruled.

*Ayala v. State*, 267 S.W.3d 428, 434 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). We held that the prosecutor's comment that the jurors would "never pull into a gas station again without thinking about [the defendant]," who murdered the decedent in a gas station parking lot, was properly considered a plea for law enforcement "when viewed in light of the immediately preceding and subsequent remarks." *Id.* at 435. Likewise, we hold that the prosecutor's comments in this

case fell within the bounds of proper jury argument, and we overrule appellant's issue. *See id.*

## H.    Prosecutorial Misconduct

In his thirteenth issue, appellant argues that the cumulative effect of the prosecutor's misconduct, described in various sections above, deprived appellant of his rights to due process and a fair trial.

Multiple errors may be harmful in their cumulating effect on the defense even if each error would be harmless standing on its own. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). The mere existence of multiple errors, however, does not warrant reversal unless they operated in concert to undermine the fundamental fairness of the proceedings. *Estrada v. State*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010). If the individual claims of error lack merit, then there is no possibility of cumulative error. *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009); *Chamberlain*, 998 S.W.2d at 238; *see also Murphy v. State*, 112 S.W.3d 592, 607 (Tex. Crim. App. 2003) ("Because we have found little or no error in the above-alleged points, there is no harm or not enough harm to accumulate.").

Examining the record as a whole, we conclude that the alleged instances of misconduct did not undermine the reliability of the fact-finding process and did not deprive appellant of a fundamentally fair trial. *Cf. Rogers v. State*, 725 S.W.2d 350, 358-61 (Tex. App.—Houston [1st Dist.] 1987, no pet.) (involving "pronounced and persistent" misconduct by prosecutor, who repeatedly made side-bar comments and suggested inflammatory facts that lacked evidentiary support). As discussed at length above, the complaints appellant makes on appeal either lack merit or did not result in harm. Contrary to appellant's contention, we do not determine that the prosecutor's errors resulted in a fundamentally unfair trial. *See*

*Murphy*, 112 S.W.3d at 607; *Castruita v. State*, 584 S.W.3d 88, 114 (Tex. App.—El Paso 2018, pet. ref'd); *see also Aguilar v. State*, No. 04-20-00056-CR, 2021 WL 2668834, at *5 (Tex. App.—San Antonio June 30, 2021, no pet.) (mem. op., not designated for publication); *Guajardo v. State*, No. 13-18-00246-CR, 2021 WL 1047057, at *9 (Tex. App.—Corpus Christi Mar. 18, 2021, no pet.) (mem. op., not designated for publication).

We overrule appellant's thirteenth issue.

## Conclusion

Having reviewed the record and overruled all of appellant's dispositive issues, we affirm the trial court's judgment.

/s/     Kevin Jewell
Justice

Panel consists of Chief Justice Christopher and Justices Wise and Jewell. (Christopher, C.J., dissenting)

Publish — Tex. R. App. P. 47.2(b).